**FISHER NUT COMPANY, petitioner, Respondent,**

v.

**Donald LEWIS, Director of the City of Saint Paul Department of Human Rights ex rel. Leonard T. GARCIA, et al., Appellants.**

**No. 52049.**

Supreme Court of Minnesota.

June 18, 1982.

Edward P. Starr, City Atty., and Beryl A. Nord, Asst. City Atty., St. Paul, for appellants.

Briggs & Morgan and John B. Van de North, Jr., St. Paul, Winston & Strawn and Gerald C. Peterson, Chicago, Ill., for respondent.

SIMONETT, Justice.

This is an appeal by the Director of the City of St. Paul's Department of Human Rights, on behalf of Leonard Garcia, claiming that the district court erred in setting aside a decision by the St. Paul Human Rights Commission in favor of Garcia. We agree with the district court that the Commission's finding of racial discrimination lacks evidentiary support, and therefore we affirm the district court's decision.

Leonard Garcia, of Mexican ancestry, has been employed as a material handler at Fisher Nut Company in St. Paul since 1975. In July 1979 Fisher Nut Company posted notice of five job openings in the warehouse division. Some 49 employees in the company applied for the warehouse position, including Garcia. Forty of the 49 applicants were rejected for failing to meet certain preliminary criteria, and five more were denied interviews for failing to receive favorable recommendations from their supervisors. The remaining four applicants were given interviews. Two of these were hired; a third, a woman, was made an offer but declined the warehouse job; and the fourth voluntarily withdrew himself from consideration. The remaining three available positions were filled by outside applicants.

All five of those eventually hired were white males.

Garcia filed a complaint with the St. Paul Human Rights Commission claiming racial discrimination. On July 1, 1980, the Commission, following a hearing, found that, indeed, Garcia had been denied the job promotion because of racial discrimination. The Commission ordered that he be provided with a job the same or similar to that he had applied for, having no less pay or benefits, and that he be awarded the difference in back pay between the job he had and the job he should have had.

Fisher Nut Company appealed to the Ramsey County District Court under Act of May 26, 1965, ch. 866, 1965 Minn.Laws 1627. The district court, on review of the record made at the Commission hearing, reversed the Commission, stating there was no evidence of discrimination, and ordered the complaint dismissed.

On appeal, there are two main issues: (1) What is the proper standard of review by the district court of the Commission's determination under 1965 Minn.Laws, ch. 866; and (2) applying that proper review standard, should the district court's decision be affirmed?

## The Standard of Review

Chapter 866, not coded, is a special law establishing the method by which an aggrieved person can obtain "judicial review" of an order of the St. Paul Human Rights Commission. The law, which was enacted in 1965 before the adoption of the state's Administrative Procedure Act, is not a model of clarity. It may be only a historical anomaly that the law has not been updated to match the later statutes governing review of human rights decisions of the City of Minneapolis and of the State Department of Human Rights. Whatever the case, the statute provides, in part:

Such proceedings shall be initiated by the filing of a petition in such court, together with a written transcript of the record upon the hearing before the commission, and the issuance and service of a notice of motion returnable at a special term of such court. Thereupon the court shall have jurisdiction of the proceeding and of the questions determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony, and proceedings set forth in such transcript an order enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the commission. The court may order a trial de novo to the court, and the person complained against shall be entitled at his request to a trial by jury. Any party may move the court to remit the case to the commission in the interests of justice for the purpose of adducing additional specified and material evidence and seeking findings thereon, provided he shows reasonable grounds for the failure to adduce such evidence before the commission.

Act of May 26, 1965, ch. 866, § 1, 1965 Minn.Laws 1627.[1]

It is perhaps not surprising that in the district court the Commission and Garcia argued that the district court's role was only to review the transcript of the hearing to ascertain if there was substantial evidence to support the Commission's determination; and that, on the other hand, Fisher Nut Company argued that the district court should undertake a *de novo* hearing based on the transcript of the hearing. The parties continue their disagreement before us. The question of the proper method of review is critical to our consideration as well. If the district court is only reviewing the Commission's determination, then, on appeal, we look to see if there is substantial

1. Chapter 866 goes on in another paragraph to provide, "A respondent may waive the hearing before the commission and demand a hearing before the district court on the complaint in which event no further proceeding shall be had before the commission." This was the route taken by the respondent in *Donald Lewis, Director, Department of Human Rights, ex rel. George R. Welles v. Metropolitan Transit Commission*, 320 N.W.2d 426 (Minn.1982). Here, however, Fisher Nut Company proceeded in a hearing before the Commission.

evidence to support the Commission's determination. But if the trial court conducts a *de novo* hearing, then appellate inquiry is limited to whether the district court's findings are clearly erroneous. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808 (Minn.1977).

■ We hold that Chapter 866, although its wording is imprecise, should be interpreted to provide that unless the district court expressly orders a trial *de novo*, the standard of review by the district court is that provided by Minn.Stat. § 15.0425 (1980). In other words, the district court should review the proceedings of the St. Paul Human Rights Commission just as it would review any agency decision under section 15.0425. Under this interpretation, the district court may, however, as the statute also provides, order that the matter be heard on the transcript as a trial *de novo*. However, if it chooses this route, it must do so expressly.

We think this construction conforms most closely to the language of Chapter 866. More importantly, it brings the St. Paul procedure more in line with the procedure guiding the Minneapolis Human Rights Commission as well as that of the State Department of Human Rights, both of which clearly provide for judicial review according to the Administrative Procedure Act, Minn.Stat. ch. 15. Minneapolis City Code § 141.50(k); Minn.Stat. § 363.071 (1980).

We conclude, further, that here the district court conducted an agency review. No trial *de novo* was expressly ordered. Moreover, the trial court's language is indicative of an agency review, for in its decision the trial court states "no evidence or inference supports a finding of discrimination"; and again, "the decision of the commission is unsupported by substantial evidence."

## The Commission's Finding of Discrimination

■ This leads us, then, to the second issue: Reviewing the Commission's decision, is its finding of discrimination "unsupported by substantial evidence in view of the entire record as submitted"? We agree with the trial court that the necessary evidentiary support is lacking and that the complaint should therefore be dismissed.

All parties agree, correctly, that this claim of discrimination under the St. Paul ordinance is governed by the standards developed under Title VII Laws, 42 U.S.C. § 2000e *et seq. See Danz v. Jones*, 263 N.W.2d 395, 399 (Minn.1978); *Lamb v. Village of Bagley*, 310 N.W.2d 508 (Minn.1981). Consequently, the case has three stages: If the employee makes out a *prima facie* case of discrimination, the employer must then "articulate" a legitimate, nondiscriminatory justification for the action taken. If the employer does so, then the employee must prove that the proffered justification is in fact a mere pretext for discriminatory action. The employer need only raise a genuine issue of fact to rebut the *prima facie* case and the burden of persuasion remains with the plaintiff.[2]

It appears Garcia may have made out a *prima facie* case. He showed that he was a member of a protected minority; that he applied for and was apparently qualified for the warehouse position; and that he was rejected for the position, after which the employer continued to seek applicants. Fisher Nut Company then asserted, however, a nondiscriminatory reason for not promoting Garcia, namely, that he failed to receive a favorable recommendation from his supervisor. This assertion raises the real issue here, whether the adverse recommendation as to Garcia's work qualifications was really a pretext for discrimination.

2. In its decision favoring Garcia, the St. Paul Human Rights Commission sets out as a conclusion of law "that the Respondent failed in its burden to show legitimate non-discriminatory reasons for rejection of Leonard T. Garcia's ancestry." This language is troublesome, since it seems to suggest that the Commission incorrectly placed the ultimate burden of proof on the defendant-employer. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Lamb v. Village of Bagley*, 310 N.W.2d 508 (Minn.1981). We need not, however, reach this issue.

Fisher Nut Company had set up five criteria for the job openings.[3] The fifth requirement was that the applicant be recommended by his or her supervisor as capable and deserving of the job. Palmer Peterson, Garcia's top-level supervisor, told the company's Human Resources Director that Garcia might not be able to get along with his new supervisor because he had a chip on his shoulder, and he felt that Garcia·did not have a good attitude about cooperation with supervisors and would not be able to work without close supervision. At the hearing, Peterson testified that Garcia was not the kind of person to do any more work than he had to, and Peterson cited a time when Garcia told his immediate supervisor that he was not going to do certain work because he did not get paid enough money and that the supervisor should send a less senior employee instead. Peterson said he might have had a "personality difference" with Garcia, but he did not know. Peterson understood that the warehouse job required a person who would maintain productivity without constant supervision and that, based on Peterson's observations, he could not give Garcia a positive recommendation.

The complainant countered with the testimony of Jack Zemlicka and Ronald Wethammer, who had been his immediate foremen, both of whom testified that Garcia was basically a good worker and competent for the warehouse job. Neither Zemlicka nor Wethammer had been consulted during the hiring process, but Fisher said this was because it considered them both union foremen and not company supervisors. Both foremen conceded there were a few minor incidents of Garcia's working a bit slowly or being in a "sullen" mood. Another general supervisor, Jerry Early, testified at the hearing that Garcia needed supervision and would not work any harder than he had to. Garcia conceded he "could have" said he

was going to work slowly because he was not paid more, and while he also claimed he had little personal contact with Peterson, he conceded Peterson "could have" observed his work.

Garcia argues that the subjective nature of the criteria used by Fisher makes its hiring procedure suspect. Fisher, on the other hand, argues it properly limited interviews to those who "deserved" the promotion. It argues that it is a legitimate business practice to reward with promotion only those employees who work "extra hard," and thus while Garcia may have been capable of performing the new job's tasks, he did not necessarily deserve the promotion. Within this "deserving" factor, such things as work attitude become more critical. From this perspective, examples of Garcia's lack of initiative and his admitted occasional conflicts with supervisors would suggest some kind of attitude deficiency.

While we have previously recognized that a subjective evaluation procedure has the potential to mask discriminatory selection, *Kaster v. Independent School District No. 625*, 284 N.W.2d 362 (Minn.1981), there was no evidence that such was the case here. The supervisor's evaluation was grounded in specific factors and fairly well-defined criteria of attitude and behavior.

The complainant's case was only an attempt to show that Garcia was in fact qualified for the job and that the supervisor's recommendation lacked a sufficient evidentiary foundation. There was no attempt, however, to show that Peterson's adverse recommendation was, in truth, a pretext for his or anyone else's ethnic prejudice. Similarly, there was no proof that nonminority persons with employment records similar to Garcia's received better treatment by the

3. The five criteria were: (1) Senior employees whose training made their transfer undesirable would not be interviewed; (2) applicants must have worked with Fisher for 6 months; (3) applicants should not have more than 10 absences in the past year; (4) applicants should not have any disciplinary letters within the past year; and (5) applicants should be recommended by their supervisors as capable and deserving of the job. Garcia met the first four criteria.

As to the fifth criteria, the Human Resources Director testified that availability, skills, performance, opportunity to do the job, and expected success on the job should be considered in making a recommendation.

employer. If anything, the evidence was to the contrary. Three white employees who, like Garcia, had no disciplinary "write-ups" were also denied interviews because of Peterson's evaluation of their work. Wethammer, the foreman who testified for Garcia, stated flatly that Garcia had not been discriminated against on the basis of race, and this evidence was never directly rebutted. Thus, as the trial court found, there was no substantial evidence that Fisher Nut Company's reasons for denying Garcia the warehouse position were a pretext for discrimination.

Affirmed.