**PEARSON CANDY COMPANY,
petitioner, Respondent,**

v.

**Johannes K. HUYEN, Director, St. Paul
Department of Human Rights, ex rel.,
Deborah E. Kanar, Appellant.**

**No. C6–85–295.**

Court of Appeals of Minnesota.

Aug. 27, 1985.

James M. Strother, Minneapolis, for respondent.

Edward P. Starr, Carla F. Hancock, City Attys., St. Paul, for appellant.

Heard, considered, and decided by SEDGWICK, P.J., WOZNIAK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Deborah Kanar appeals from a district court order overturning a finding made by the St. Paul Human Rights Commission that Pearson Candy Company unlawfully discriminated against her under St. Paul, Minn., Legis.Code ch. 183 (1983).

## FACTS

On June 12, 1983, Deborah Kanar (Kanar), hired through Personnel Pool, a temporary agency, began work on Pearson Candy Company's (Pearson) assembly line as a wrapper/packer/feeder ("w/p/f"). After a short term of temporary employment, Pearson asked Kanar whether she would be willing to apply for permanent employment. Kanar indicated that she would. Prior to making an offer of permanent employment, Pearson required Kanar to undergo a physical exam and complete a medical questionnaire. The physical exam and medical questionnaire were standard procedure for all prospective Pearson employees.

On the questionnaire Kanar revealed that she had grand mal epilepsy for which she took a medication, Dilantin. Dr. Francisco de la Rosa, who performs pre-employment physicals on a contract basis for Pearson, found Kanar medically acceptable to work on the assembly line *provided* she avoid climbing ladders and stay away from dangerous machinery with sharp or moving parts. Pearson had several such machines on the assembly line where Kanar would work. Thus Dr. de la Rosa's limitations went to the core of the duties of a w/p/f.

When Kanar returned the questionnaire and Dr. de la Rosa's physical examination form to Pearson, the company refused to allow Kanar to complete her shift or her job application.

Kanar then contacted her physician, Dr. S.C. Lagalwar. Dr. Lagalwar consulted with Dr. de la Rosa and agreed with Dr. de la Rosa's analysis of the limitations necessary were Kanar to be employed on the assembly line.

On July 26, 1983, Pearson informed Kanar she would not be hired. The record reflects that, prior to informing Kanar she would not be hired, the Pearson personnel department made a genuine effort to place Kanar in some position at Pearson.

A w/p/f is an entry-level position in which an employee works at one or more of several lines either feeding unwrapped product into conveyor slots, packing wrapped product into display boxes, packing boxes into shipping cartons, or various similar tasks. From time to time a w/p/f must climb on an open ladder to unjam a machine. One line position requires the employee to sit on a high stool situated on a raised platform.

Dr. de la Rosa was familiar with Pearson's machinery from having done numerous pre-employment physicals and he knew of Pearson's history of laceration and amputation injuries. A number of Pearson's machines fit Dr. de la Rosa's description of being dangerous.

Kanar's epilepsy was diagnosed in November, 1981, when she had her first grand mal seizure. Since then, she has had one other seizure in June, 1982.

Following Pearson's refusal to hire her, Kanar filed a complaint with the St. Paul Department of Human Rights. Following an investigation and hearing, the Commission found Pearson's denial of employment violated St. Paul, Minn., Legis.Code ch. 183.02, subd. 3 (1983), and ordered Pearson to pay Kanar $2,243.20 for lost wages and $6,000.00 for mental anguish.

Pearson appealed to district court claiming the Commission's findings were not supported by the record as a whole and its conclusion of law, that Pearson's action was a violation of ch. 183, was unsupported substantial evidence based on the record as a whole, and was an improper application of law.

The district court agreed with Pearson and overturned the Commission. Kanar now appeals that district court order vacating the Commission's order and dismissing her discrimination charge.

## ISSUE

Did the district court properly find that the record as a whole did not support the findings of the Human Rights Commission?

## ANALYSIS

 Kanar challenges the district court's overturning the Human Rights Commission's finding of discrimination based on her handicap. Unlike non-administrative matters where district court decisions are given deference by this court and are subject to the clearly erroneous standard of review, administrative law appeals are given *de novo* review:

[I]t is our function to make an independent examination of an administrative agency's record and decision and arrive at our own conclusions as to the propriety of that determination without according any special deference to the same review conducted by the trial court.

*In re 1984 Pine County Attorney Budget,* 366 N.W.2d 708, 710 (Minn.Ct.App.1985) (citations omitted).

■ The district court must uphold the findings of fact of the commission if supported by substantial evidence based on the record as considered as a whole. 1965 Minn.Laws 866, sec. 1 (as amended, 1983 Minn.Laws 131, sec. 1).

■ The St. Paul Legislative Code bars employment discrimination on the basis of handicap:

> Except when based on a bona fide occupational qualification, it shall be unlawful * * * (2) [f]or an employer, because of race, creed, religion, color, sex, national origin or ancestry, age, disability, marital status or status with regard to public assistance * * * (a) [t]o refuse to hire an applicant for employment.

St. Paul, Minn.Legis.Code ch. 183.03(2)(a) (1983). Refusing to hire based on a bona fide occupational qualification, such as failure to meet vision testing standards for the position of bus driver, is a defense to a claim of discrimination. *Lewis v. Metropolitan Transit Commission,* 320 N.W.2d 426 (Minn.1982). The bona fide occupational qualification is *not* at issue in this case.

An additional defense to the charge of employment discrimination based on handicap is at issue here:

> that the person bringing the complaint or action suffers from a mental or physical disability which poses a serious threat to the health or safety of the disabled person or others. The burden of proving this defense is upon the respondent.

Ch. 183.02, subd. 3.

The St. Paul Human Rights Commission found that Kanar's epilepsy did not pose a serious threat to herself or to her co-workers' health or safety at the time she was offered a permanent position at Pearson; that her epilepsy was controlled by medication and she would not pose a serious threat to herself or to her co-workers if hired permanently by Pearson; and that Pearson's decision not to hire Kanar permanently constituted discrimination on the basis of her handicap in violation of ch. 183.03.

The Human Rights Commission delivered a split decision. The lengthy dissent cited Kanar's two seizures, the second of which occurred after she forgot to take her medication. The dissent noted that Kanar had no warning "aura" before her first seizure although she did before her second, and that whether she will have a warning aura before a future seizure or whether she will have a seizure on the job is uncertain. What medical evidence appears in the record supports the uncertainty of Kanar's being able to rely on a warning aura prior to a seizure.

The dissent also cited a documented period of time during which Kanar was not taking her medication properly. The dissent found Kanar was denied employment as a result of job limitations imposed by Dr. de la Rosa and agreed to by Kanar's personal physician, Dr. Lagalwar, who initially diagnosed her epilepsy.

The dissent also challenged the conclusions of appellant's expert, Dr. Gregg of Occupational Health Services at St. Paul Ramsey Medical Center. Dr. Gregg concluded, based on his observations made during a tour of the factory and his review of Kanar's medical records, that Kanar posed no serious threat of harm to herself working in the w/p/f position and that her epilepsy was controllable with medication. The record reflects that, unlike Drs. de la Rosa and Lagalwar, Dr. Gregg never met with or examined Kanar.

The district court, vacating the Human Rights Commission's order, found that the Commission's conclusion that Kanar did not pose a serious threat to her or her co-workers' safety was not supported by substantial evidence based on the record as a whole. The district court criticized the Commission for placing great weight on Dr. Gregg's opinion and determining that Drs. de la Rosa, Pearson's consultant, and Lagalwar, Kanar's personal physician, were wrong in their assessment of the potential dangers of employing Kanar.

The court found that Pearson was entitled to require a pre-employment physical and, further, was entitled to—if not required to—rely on Dr. de la Rosa's report, based on the holding of *Lewis v. Remmele Engineering, Inc.*, 314 N.W.2d 1 (Minn. 1981), which states:

> [A]s a general rule, to satisfy the standard of a "serious threat" to one's health or safety, the employer must establish that it relied upon competent medical advice that there exists a reasonably probable risk of serious harm.

*Id.* at 4 (citations omitted).

The record establishes that Pearson relied on Dr. de la Rosa's pre-employment physical report, on his familiarity with Pearson's machinery, and the fact that Kanar's personal physician agreed with Dr. de la Rosa as to the necessary limitations should Kanar be employed around moving machinery. Kanar's seizures may appear with or without a warning aura and produce loss of consciousness. A sudden loss of consciousness while working on the assembly line could lead to Kanar's suffering injury to herself by falling backwards, or serious injury to herself and possibly co-workers by falling forward into assembly line machinery. Substantial evidence supports the trial court's conclusion that Kanar's epilepsy posed a serious threat to her and her co-workers' health and safety, and that Pearson's refusal to hire her was justified under St. Paul, Minn., Legis.Code ch. 183.02, subd. 3.

## DECISION

The district court properly found that the record as a whole did not support the findings of the Human Rights Commission.

Affirmed.