**PEARSON CANDY COMPANY,**
Petitioner, Respondent,

v.

**Johannes K. HUYEN, Director St. Paul Department of Human Rights, ex rel., Deborah E. KANAR, Appellant.**

No. C6–85–295.

Court of Appeals of Minnesota.

April 22, 1986.

James M. Strother, Minneapolis, for respondent.

Edward P. Starr, Carla F. Hancock, City Attys., City of St. Paul, St. Paul, for appellant.

Heard, considered, and decided by SEDGWICK, P.J., and WOZNIAK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This case was remanded to us for reconsideration in light of the standard of review of 1965 Minn. Laws, ch. 866, section 1 as amended by 1983 Minn. Laws, ch. 30, section 1. The facts are set out in our previous opinion *Pearson Candy Co. v. Huyen*, 373 N.W.2d 377 (Minn.Ct.App.1985), *remanded*, 380 N.W.2d 764 (Minn.1986). In that case we affirmed the district court's overturning the St. Paul Human Rights Commission's finding that Deborah Kanar had been unlawfully discriminated against on the basis of her disability, epilepsy. Using the standard of review set out in 1965 Minn. Laws, ch. 866, section 1 as amended by 1983 Minn. Laws, ch. 30, section 1, we affirm.

## ISSUE

Did the district court properly find that the Human Rights Commission's findings were not supported by sufficient evidence based on the record considered as a whole?

## ANALYSIS

*Standard of Review*

The district court, on petition by respondent, reviewed the evidence and transcript of the Human Rights Commission hearing. Ch. 30 provides:

Any anti-discrimination commission established by an ordinance of the city of St. Paul shall, in addition to all powers now contained in said ordinance be granted the power and authority to provide that any complainant, respondent, or other person aggrieved by any order of the St. Paul human and civil rights commission may obtain judicial review thereof.

Our standard of review of St. Paul's Human Rights Commission decisions is that [t]he findings of facts by the commission shall be conclusive if supported by *sufficient evidence* on the record considered as a whole.

1983 Minn. Laws, ch. 30, section 1 (emphasis added). This language of the 1983 amendment has not been interpreted by Minnesota's appellate courts.

The amendment is not a model of clarity. The term "sufficient evidence" does not relate to any recognized agency standard of review. The term is imprecise and does not fit squarely within any of the four different levels of proof Minnesota recognizes: 1) "Preponderance of evidence" is used in civil and administrative law. 2) "Substantial evidence" is the administrative law standard of review. 3) "Clear and convincing" is used in various areas of law. 4) "Beyond a reasonable doubt" denotes the State's burden in criminal cases.

*Fisher Nut Co. v. Lewis ex. rel. Garcia,* 320 N.W.2d 731 (Minn.1982) interpreted 1965 Minn. Laws, Ch. 866, section 1, which applied the substantial evidence test found in Minn.Stat. § 15.0425 (1980). At that time the law provided that a trial *de novo* could be ordered by the district court following a hearing before the St. Paul Human Rights Commission. The 1983 legislative amendment, enacted after *Fisher Nut,* deleted the trial *de novo* provision and added "sufficient evidence on the record considered as a whole" as the standard of review for St. Paul Human Rights Commission's decisions. St. Paul amended its code to the "sufficient evidence" standard following the *Fisher Nut* decision.

The St. Paul Legislative Code offers us no guidance to the definition of "sufficient evidence." Black's Law Dictionary, defines "sufficient evidence" as

*Adequate evidence;* such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded; * * * Sufficient evidence is that which is satisfactory for the purpose

Black's Law Dictionary 1285 (5th ed. 1979) (emphasis added).

■ We hold that this definition, adequate evidence or evidence "which is satisfactory for the purpose," is consistent with ch. 30, section 1 and we apply that definition in our decision.

The term "substantial evidence" used in administrative law review, is closest to "sufficient evidence." Substantial evidence is defined as

1. Such relevant evidence as a reasonable mind might accept as *adequate to support a conclusion;*
2. More than a scintilla of evidence;
3. More than some evidence;
4. More than any evidence; and
5. The evidence considered in its entirety.

*Cable Communications Board v. Nor-West Cable Communications Partnership,* 356 N.W.2d 658, 668 (Minn.1984) (emphasis added). "The substantial evidence test requires a reviewing court to evaluate the evidence relied upon by the agency in view of the entire record as submitted." *Id.* "If an administrative agency engages in reasoned decisionmaking, the court will affirm, even though it may have reached a different conclusion had it been the fact-finder." *Id.*

Thus we find that of the definitions of the different levels of proof, substantial evidence gives us guidance.

Reviewing the record on appeal, we must give deference to the Commissions' findings. However, we affirm the trial court's decision that the Commissions' findings were not supported by sufficient evidence.

■ The St. Paul Legislative Code bars employment discrimination on the basis of disability:

Except when based on a bona fide occupational qualification, it shall be unlawful * * * (2) [f]or an employer, because of race, creed, religion, color, sex, national origin or ancestry, age, disability, marital status or status with regard to public assistance * * * (a) [t]o refuse to hire an applicant for employment.

St. Paul, Minn.Legis.Code ch. 183.03 (1983). Refusal to hire based on a bona fide occupational qualification, such as failure to meet vision testing standards for the position of bus driver, is a defense to a claim of discrimination. *Lewis v. Metropolitan Transit Commission,* 320 N.W.2d 426 (Minn.1982). The bona fide occupational qualification is not at issue in this case.

■ Pearson raises, as a defense to Kanar's charge of employment discrimination based on disability,

that the person bringing the complaint or action suffers from a mental or physical disability which poses a serious threat to the health or safety of the disabled person or others. The burden of proving this defense is upon the respondent.

Ch. 183.02, subd. 3.

The Commission found Pearson did not meet its burden of proof under ch. 183.02, subd. 3. The Commission found that Kanar's epilepsy did not pose a serious threat to herself or to her co-workers' health or safety at the time she was offered a permanent position at Pearson; that her epilepsy was controlled by medication and she would not pose a serious threat to herself or to her co-workers if she were to be hired permanently by Pearson; and that Pearson's decision not to hire Kanar on a permanent basis constituted discrimination on the basis of her disability, a violation of ch. 183.03. We hold that these findings are not supported by sufficient evidence.

The record discloses that Pearson made a good faith effort to find a position at Pearson for Kanar, but did not hire her after being faced with her medical record. Her medical record disclosed that Kanar had at least two seizures, the second of which occurred after she forgot to take her medication. Kanar had no warning "aura" before her first seizure, although she did before her second. Whether she will have a warning aura before future seizures or whether she will have a seizure on the job is uncertain. What medical evidence appears in the record supports the uncertainty of Kanar's being able to rely on a warning aura prior to a seizure. The record discloses a documented period of time during which Kanar was not taking her medication properly.

The Commission relied heavily on the opinion of appellant's expert, Dr. Gregg of Occupational Health Services at St. Paul Ramsey Medical Center. Dr. Gregg concluded, based on observations made during a tour of the factory and a review of Kanar's medical records, that Kanar posed no serious threat of harm to herself working in the wrapper/packer/feeder position and that her epilepsy was controllable with medication. The record reflects that, unlike Drs. de la Rosa and Lagalwar, Dr. Gregg never met with or examined Kanar.

The district court criticized the Commission for placing great weight on Dr. Gregg's opinion and for determining that Pearson's consultant, Dr. de la Rosa, and Kanar's personal physician, Dr. Lagalwar, who examined her personally, were wrong in their assessment of the potential dangers of employing Kanar. We affirm that Kanar was properly denied employment as a result of job limitations imposed by Dr. de la Rosa and agreed to by Kanar's personal physician, Dr. Lagalwar. Dr. de la Rosa was familiar with Kanar's medical history, the position of wrapper/packer/feeder, and with the Pearson plant. He stated that many of the moving parts of the assembly line, as well as the necessity of occasionally climbing ladders to unjam machines, would pose a danger to Kanar and her co-workers were Kanar to have a seizure while working. A sudden loss of consciousness while working on the assembly line could lead to Kanar's suffering injury to herself by falling backwards or forward into assembly line machinery.

The district court found that Pearson was entitled to require a pre-employment physical and further, was entitled to, if not required to, rely on Dr. de la Rosa's report.

based on the holding of *Lewis v. Remmele Engineering, Inc.*, 314 N.W.2d 1, 4 (Minn. 1981), which states:

> [A]s a general rule, to satisfy the standard of a "serious threat" to one's health or safety, the employer must establish that it relied upon competent medical advice that there exists a reasonably probable risk of serious harm.

The record establishes that Pearson properly relied on Dr. de la Rosa's pre-employment physical report, on his familiarity with Pearson's machinery, and on the fact that Kanar's personal physician agreed with Dr. de la Rosa as to certain work limitations should Kanar be employed by Pearson. The limitations were not readily compatible with the position of wrapper/packer/feeder.

Even after giving deference to the findings of the Commission, we conclude that the holding of the district court overturning the Commission's finding of discrimination was correct.

## DECISION

The Human Rights Commissions' findings that Kanar did not pose a threat to her or her co-workers' safety was not supported by sufficient evidence. The district court properly reversed the Commissions' findings.

Affirmed.