James SWENSON, et al., Appellants,

v.

STATE of Minnesota, DEPARTMENT OF PUBLIC WELFARE, Respondent,

Kittson County Welfare Board, Respondent.

No. C9–82–34.

Supreme Court of Minnesota.

Jan. 21, 1983.

Stephen E. Scott, Minneapolis, for Legal Advocacy for Developmentally Disabled Persons in Minnesota.

Hubert H. Humphrey, III, Atty. Gen., and Alan Held, Sp. Asst. Atty. Gen., St. Paul, for State of Minn., Dept. of Public Welfare.

Brink, Sobolik, Severson & Vroom and Ronald C. Vroom, Hallock, for Kittson County Welfare Bd.

John H. LeMay, St. Paul, amicus curiae for ARC–MN.

Peter W. Brown, Minneapolis, amicus curiae, for MDACA and ARRM.

WAHL, Justice.

This case involves the provisions of Developmental Achievement Center (DAC) services to mentally retarded adults mandated by Department of Public Welfare (DPW) Rule 160, 12 M.C.A.R. § 2.160 (1982). The issues raised are whether those mandatory services may be reduced when funds are in short supply and, if so, what procedures must be followed. The case arises out of Kittson County but has implications statewide in the area of county budgeting for all community social services.

The appellants in this case are seven mentally retarded adults for whom Kittson County is financially responsible under Minn.Stat. § 256D.18 (1982). They had been in the state hospital system for long periods of time but were moved out as a result of the state's policy to deinstitutionalize the mentally retarded and enable them to live in the community as normally as possible.[1]

Kittson County, the community to which appellants were returned, contracted with "host" counties to provide DAC services under Minn.Stat. § 252.21 (1982) because the one DAC in Kittson County was filled to capacity. Appellants live in foster or group homes in the host counties and receive DAC services.

It became apparent to the Kittson County Board in June 1980 that funds allotted for these services would be insufficient for the year budgeted. The Board, without assessing the needs of the individuals involved, reduced the DAC services for the 11 individuals receiving those services in host counties from 5 days per week to 3 days per week. Seven of those individuals, the appellants in this case, appealed the Board's decision to the DPW. Their case was heard by referee Bert Dold, who concluded that DPW Rule 160 mandated the level of services the appellants were receiving and recommended that the decision of the Kittson County Board to reduce those services be reversed. The Commissioner of the DPW, Arthur Noot, while not disagreeing that Rule 160 mandated DAC services in accordance with the individual service plan of the person needing them, determined that Rule 160 was superseded by the County Board's

---

1. This policy of deinstitutionalization is stated in Department of Public Welfare Rule 185B.1, 12 M.C.A.R. § 2.185B.1 (1982), and is embodied in the consent decree in *Welsch v. Noot,* No. 4–72 Civ. 451 (D.Minn., Sept. 15, 1980) (Welsch Consent Decree).

authority to limit services in the face of serious fiscal constraints. Appellants appealed this decision to a three-judge district court panel, which affirmed the Commissioner's decision, holding that neither Kittson County nor the Commissioner of the DPW acted unlawfully or arbitrarily in reducing DAC services for out-of-county residents from 5 to 3 days per week. Because the Commissioner and the County Board improperly applied DPW regulations, we reverse.

Counties in Minnesota provide a wide range of social services with the monies available to them from federal Title XX funds, state block grant allocations, and local levy revenues. Rule 160 divides the types of social services provided into optional, priority, and mandatory categories. Under Rule 160C.1.b, optional and priority services may be denied where the costs exceed the limits of the biennial service plan that counties adopt pursuant to Minn.Stat. § 256E.09, subd. 1 (1982), part of the Community Social Services Act (CSSA). Rule 160 classifies DAC services as mandatory services which "shall be provided in accordance with the individual service plan to all persons who need them as determined by the local social services agency." 12 M.C.A.R. § 160C.1.a (1982). In the case of the appellants, the individual service plans made by the social services agency of the host county and acquiesced in by Kittson County determined that each individual needed DAC services 5 days per week.

At the hearing before the referee, the parties stipulated that the facts in each of the seven cases were approximately the same and that they would try only the case of Laura Lindstrom to provide the factual framework in which to consider the legal claims of all of the plaintiffs.

The evidence adduced at the hearing shows that Laura Lindstrom, age 54, was placed by Kittson County with Mr. and Mrs. Ludtke in a foster home in Becker County after 42 years in a state institution. As part of that placement, Kittson County contracted with Becker County to provide Laura Lindstrom with DAC services. As required under DPW regulations, an interdisciplinary team of professionals developed an annual service plan aimed at her specific needs. She had communication problems, violent outbursts, and other aggressive behavior. The individual plan developed for her called for her attendance at the DAC on a 5-day-per-week basis. She received daily speech therapy and work activity and attended self-help classes including grooming, housekeeping and physical education. She also received some occupational therapy and community awareness training. A specific behavior modification program was developed to help stem her aggressiveness. The Ludtkes considered returning her to an institution at one point, but Mr. Ludtke testified that this was avoided due to progress attributable to the DAC program. Other evidence also indicated that Laura Lindstrom had made tremendous progress in her 2 years in foster home placement with DAC services on a 5-day-per-week basis and that the cutting of those services to 3 days per week would cause behavioral regression, loss of foster home placement, and her likely return to a state hospital.

Relying on the fact that DAC services are mandatory under Rule 160C.2.b, rather than priority or optional, Referee Dold concluded that Kittson County had no authority to reduce Laura Lindstrom's participation in the Becker County DAC program from 5 to 3 days per week. He found no conflict between Rule 160, mandating DAC services, and then existing Rule 185.A.1, 4 S.R. 1975 (1980), which, as the County pointed out, "shall not be construed as requiring expenditures of money that is not available for mental retardation services." The referee reasoned that the County had a block grant of social service funds and could reallocate funds from priority and optional to mandatory services; therefore, these funds were all "available" for mandatory DAC services.

The Commissioner rejected the referee's proposed order. He did not deny that Rule 160 makes DAC services mandatory but declared instead that the provisions of Rule 160 "when considered within the context of the Community Social Services Act, do[]

not supersede the authority of the county board to limit provision of a service when faced with serious fiscal constraint." The question, then, is whether the CSSA and Rule 185 give counties the authority to limit mandatory DAC services, as Kittson County did in this case.

The CSSA establishes a system for provision of many social services, including DAC services under Minn.Stat. §§ 252.21–.27 (1982). Rule 185 and section 252.24, subd. 1 both restrict county expenditures for mental retardation services to "available" monies. At the time the Commissioner and the district court made their decisions, Rule 185 had been amended to read: "This rule shall not be construed as requiring expenditures of money that is not *made* available to the County Board *from all available resources* for mental retardation services." 12 M.C.A.R. § 2.185A.2 (1982) (new language emphasized). Similarly, section 252.-24, subd. 1 provides for county boards to contract for DAC services for mentally retarded persons "within the appropriation made available for this purpose."

The issue thus becomes: what funds were "available" to the County Board to provide the DAC services mandated by Rule 160? Evidence before the referee indicated that Kittson County would receive over $250,000 in federal, state, and local funds in 1981. Appellants argue that these funds were all "available" to Kittson County to provide social services and that Kittson County's budgeting decisions, rather than the lack of available funds, caused the shortfall in DAC service funds.

Kittson County was obliged to budget these funds for social services within existing statutes and DPW regulations. Construing Rules 160 and 185 and Minn. Stat. § 252.24, subd. 1 together as we must, we conclude that the various appropriations received by Kittson County for social services were all "available" for services mandated by Rule 160C.2.[2] To interpret either Rule 185 or section 252.24, subd. 1 as respondents urge would permit counties to

budget insufficient funds and then terminate or limit mandatory services arbitrarily.

Rule 160 was promulgated to ensure that county boards would follow established state priorities in allocating their funds among diverse disabled persons. That Developmental Achievement Center services are mandatory under that rule recognizes both the high priority the state has placed on the deinstitutionalization of the mentally retarded in Minnesota and the requirements of the Welsch Consent Decree. Until its budgetary problems in June of 1980, the Kittson County Welfare Department had provided these mandatory services as called for by Rule 160 and the individual plans developed, in these cases, by the host counties. This was the proper implementation of the rule.

The decision made by the Kittson County Board and approved by the Commissioner to arbitrarily change appellants' individual service plans by reducing DAC services from 5 days a week to 3 days a week substantially changed the implementation of the mandated provisions of Rule 160. The Board could properly have required a reevaluation of the individualized service plans of all of the mentally retarded adults from Kittson County to see if DAC services to any of those persons could be reduced and, if not, could have reallocated funds budgeted for optional and priority services. This the Board did not do but chose rather to reduce the level of those DAC services for which it had contracted outside Kittson County.

Although, as the appeals referee noted, Kittson County tried to resolve an impending financial crisis in an orderly and sensible fashion, the action taken by the County violated the mandates of Rule 160. The County and the Commissioner incorrectly concluded that Rule 185 and section 252.24 conflicted with and limited those mandates. Because we hold that all county appropriations for social services were available for mandatory services, the fiscal restrictions

**2.** We are not asked to decide whether DAC services could be limited if the available appropriations were insufficient to provide for all mandatory services.

relied on by respondent do not limit the application of Rule 160 in the circumstances of this case.

Respondents and the district court relied in part on an amendment to Minn.Stat. § 256E.05, subd. 3(b) which required the agency to eliminate any mandate in its rules ordering counties to provide any specific social service unless that mandate is required by law. Minn.Stat. § 256E.05, subd. 3(b) (Supp.1981). That section was further amended, effective July 1, 1982, to establish a modified rulemaking procedure for eliminating mandatory services unless state or federal law requires that they be mandated. Minn.Stat. § 256E.05, subd. 3(b) (1982).

■ Although DAC services are not mandated by state statute, the Welsch Consent Decree provides a basis in federal law for requiring counties to provide DAC services for mentally retarded persons who need them. This decree provides in part that "[m]entally retarded people shall be admitted to state institutions only when no appropriate community placement is available. The county has responsibility for locating an appropriate community placement, or, in the event that none exists, insuring that such placement is developed." Further, the decree requires that persons discharged from state institutions are to be placed in community programs which appropriately meet their individual needs and are to be provided with appropriate educational, developmental or work programs, including developmental achievement programs.

■ In the cases before us, the individual service plans mandated by Rule 160C.1.-a. and developed as required by Rule 185B determined that DAC services were necessary to meet the needs of the plaintiffs and to prevent their reinstitutionalization. As we read *Welsch,* this determination of need made DAC services at some level mandatory under federal law. The level of services, on the other hand, was made mandatory by Rule 160's requirement that DAC services

be provided in accordance with the individual service plans. The reductions made in the level of services recommended by appellants' individual service plans violated Rule 160. Unless and until Rule 160 is amended to provide otherwise, DAC services must be provided in accordance with the individual service plan.[3] If such amendment is undertaken, the agency must use the formal rulemaking procedures set out in Minn.Stat. §§ 14.01–.70 (1982).

A county decision, however well thought out, to change the implementation of an agency rule is one that must be channeled through the rulemaking process. As an "agency statement of general applicability and future effect," the decision by Kittson County and the DPW Commissioner was an amendment of Rule 160 under Minn.Stat. § 14.02, subd. 4 (1982). In questions of social and political importance such as the allocation of resources to the disabled, an opportunity for participation by all interested parties, as required by Minn.Stat. § 14.-14, subd. 1 (1982) is both necessary and desirable. *See McKee v. Likins,* 261 N.W.2d 566, 578 (Minn.1977). The agency must either follow its own regulations or amend them in accordance with statutory rulemaking procedures.

Reversed and remanded for proceedings not inconsistent with this opinion.

---

**3.** The Commissioner, in amending regulations, will, of necessity, be mindful of the state's

obligation to comply with the requirements of *Welsch.*