In the Matter of the Request for Denial of a Request for a Contested Case Hearing and Issuance of a National Pollutant Discharge Elimination System and State Disposal System to HIBBING TACONITE CO., Bethlehem Steel Corporation, Cleveland–Cliffs, Inc., Pikeville Coal Company, and Stelco Holding Company.

Nos. C7–88–868, C9–88–869.

Court of Appeals of Minnesota.

Nov. 22, 1988.

Clay R. Moore, Mackall, Crounse & Moore, Minneapolis, for relator Cleveland–Cliffs, Inc.

David E. Krause, Steven D. Jamar, Krause and Rollins, Minneapolis, for relator Bethlehem Steel Corp.

Hubert H. Humphrey, III, Atty. Gen., Alan R. Mitchell, Asst. Atty. Gen., St. Paul, for MPCA.

Heard, considered and decided by HUSPENI, P.J., and NORTON and HACHEY,* JJ.

NORTON, Judge.

Relators Bethlehem Steel and Cleveland–Cliffs, Inc. appeal from Minnesota Pollution Control Agency (MPCA) findings of fact, conclusions of law and order and issuance of a permit dated March 22, 1988. The MPCA's order denied the request for a contested case hearing to determine whether parent corporations should be named as

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

parties to a permit applied for by their subsidiaries. The relators claim that by naming the parent corporations as permitees the MPCA has exceeded its statutory authority, acted arbitrarily, engaged in unpromulgated rulemaking, violated the due process clause; and that the agency's findings of fact are not supported by substantial evidence. We reverse and remand for further proceedings.

## FACTS

Hibbing Taconite Company is engaged in the open pit mining of taconite near Hibbing, Minnesota. Water from rain and ground percolation continuously flows into the mining pits and must be pumped out. Some water is used in plant operations, with the excess water being discharged into ditch areas. The excess water ultimately flows into public waters of Minnesota. An MPCA permit is required to dispose of the excess water. With the leachate and surface runoff, there is a potential for long term water quality problems.

The permit which is the subject of this appeal (National Pollution Discharge Elimination System/State Disposal System Permit MN 0001465), was originally issued to Hanna Mining Company and was transferred to Hibbing Taconite Company. This permit governs the disposal of accumulated water in the presently unused Hull–Rust Iron Ore Pit. The permit allows Hibbing Taconite Company to drain water from the Hull–Rust pit into the Hibbing storm sewer system. This procedure prevents seepage from the Hull–Rust pit into Hibbing Taconite's nearby operating mine pit. In August 1986, Hibbing Taconite applied to the MPCA for reissuance of the permit, because the expiration date of the permit was approaching.

In August 1987, the MPCA gave notice of its intention to reissue a modified permit. In addition to the agreed technical modifications, the MPCA proposed to reissue the permit to three additional permitees: Bethlehem Steel Corporation, Cleveland–Cliffs, Inc. and Stelco, Inc.

Hibbing Taconite Company is a joint venture with participation of three corporations—Bethlehem Hibbing Corporation, Pickands Mather & Co., Ontario Hibbing Company—and one partnership—Hibbing Development Company. Hibbing Development Company is owned by Bethlehem Hibbing Corporation, Pickands Mather & Co. and Ontario Hibbing Company. Bethlehem Hibbing Corporation is a wholly owned subsidiary of Bethlehem Steel Corporation. Pickands Mather & Co. is a wholly owned subsidiary of Cleveland–Cliffs, Inc. Ontario Hibbing Company is a wholly owned subsidiary of Pikeville Coal Company, in turn a wholly owned subsidiary of Stelco Holding Company, in turn a wholly owned subsidiary of Stelco, Inc.

After the MPCA gave public notice of its intention to make the three parent corporations additional parties to the Hibbing Taconite Company permit, the parent corporations objected to being made parties to the permit and requested a contested case hearing on the issue. The objection was made by letter from the managing partner of Hibbing Taconite Company. The matter came before the MPCA board on March 22, 1988 as part of its regular agenda. After a brief discussion, the board voted to grant the permit as proposed by the MPCA staff, and denied a contested case hearing. In naming the parent corporations as co-permitees, the MPCA relied on certain findings of fact:

3. The facility covered by the permit has the potential to generate leachate and surface runoff and, in so doing, has the potential for long term water quality problems.

\* \* \* \* \* \*

12. The mining industry is subject to sudden and dramatic changes in financial conditions. Business cycles are unpredictable, as is the future capability of Hibbing Taconite Company and the four joint venture participants to carry out the terms of the permit and any associated responsibilities.

The MPCA additionally made findings relating to the corporate identity and finan-

cial stability of the permitees in determining that no contested case hearing is necessary:

11. There is no dispute over the fact that Hibbing Taconite Company is presently financially stable and capable of carrying out the terms of the permit. No hearing is necessary since the underlying factual issue is not in dispute.

\* \* \* \* \* \*

13. \* \* \* By indicating a willingness to name the four joint venture participants in addition to their corporate parents as co-permitees, the agency recognizes their legitimacy and separateness.

\* \* \* \* \* \*

15. There is no material issue of fact in dispute regarding the legitimacy and separateness of the subsidiaries and a hearing would not help the agency resolve the policy and legal decision whether the parent organizations should be named as co-permitees.

The MPCA concluded that the conditions of Minnesota R. 7001.0140 (1987) had been met, and reissued the permit to Hibbing Taconite Company and the parent corporations. Bethlehem Steel and Cleveland–Cliffs obtained writs of certiorari to review the MPCA action.

### ISSUES

I. Did the MPCA exceed its statutory authority in naming the parent corporations as co-permitees?

II. Are the foreign parent corporations entitled to a contested case hearing pursuant to Minnesota R. 7001.0130?

III. Did the MPCA engage in improper rulemaking by creating a general policy statement without prior notice or comment periods as required by Minnesota Statutes?

### ANALYSIS

*Standard and Scope of Review*

The relators' appeals are brought pursuant to Minn.Stat. § 115.05, subd. 11 (1986) which provides that judicial review of an MPCA decision shall be obtained under the Administrative Procedure Act. Judicial review of an administrative agency decision is governed by Minn.Stat. § 14.69 (1986) which provides:

In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions, or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

▮▮ Decisions of administrative agencies enjoy a presumption of correctness and will be reversed only when they reflect an error of law or when the findings are arbitrary and capricious or are unsupported by substantial evidence. *Crookston Cattle Co. v. Minnesota Department of Natural Resources,* 300 N.W.2d 769, 777 (Minn. 1980). When statutory interpretation is at issue, however, a reviewing court is not bound by the agency's determination. *Arvig Telephone Co. v. Northwestern Bell Telephone Co.,* 270 N.W.2d 111, 114 (Minn. 1978). An agency decision is entitled to some deference, "where (1) the statutory language is technical in nature, and (2) the agency's interpretation is one of longstanding application." *Id.* Administrative agency decisions which are quasi-judicial in nature are more closely scrutinized than the quasi-legislative decisions which receive an extremely limited review on appeal. *Id.* at 116.

▮▮ The MPCA claims that it has made an informal decision, which has a rational

basis standard of review, rather than the review standards provided in Minn.Stat. § 14.69. However, there is nothing in the statute or the record which would suggest to us that the agency's decision in this case is purely a matter of legislative policy which comes under a rational basis test.

## I.

Relators argue that the MPCA exceeded its statutory authority in naming unwilling, foreign corporations as co-permitees on a permit which was applied for only by Hibbing Taconite.

■ The extent of jurisdiction or authority bestowed upon an administrative agency is measured by the statute from which it derives its authority. *McKee v. County of Ramsey*, 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976). Authority is not obtained by the agency's own acts, or by its assumption of authority. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn. 1984).

MPCA's power to grant permits and set conditions to the permits is given pursuant to Minn.Stat. § 115.03, subd. 1(e) (1986). The MPCA has the power:

> to adopt, issue, reissue, modify, deny, or revoke, enter into or enforce reasonable orders, permits, variances, standards, rules, schedules of compliance, and stipulation agreements, under such conditions as it may prescribe, in order to prevent, control or abate water pollution, or for the installation or operation of disposal systems or parts thereof, or for other equipment and facilities.

*Id.* The agency's authority to include conditions in permits in order to protect the environment is also contained in Minn.R. 7001.0150, subpt. 2 (1987) which provides:

> Each draft and final permit must contain conditions necessary for the permitee to achieve compliance with applicable Minnesota or federal statutes or rules.

■ Because this is a question of statutory interpretation and this is not a technical statute and not a longstanding interpretation by the agency, this court does not have to give any deference to the agency's interpretation. *See Arvig Telephone Co.*, 270 N.W.2d at 114.

■ The duties and powers set forth in the statute do not specify the parties to whom the MPCA may issue a permit, nor state if naming an additional party is an allowable condition. Although no Minnesota court appears to have interpreted "condition," other courts have held that a "condition" is a limiting provision of an instrument and that a condition does not create an independent or new obligation. *Bluewaters, Inc. v. Graham Cochrane BOAG*, 320 F.2d 833, 835 (1st Cir.1963). We believe the MPCA has exceeded its authority by naming an additional party to the permit as a condition of the permit, because we believe a "condition" as used in the statute is different from a "person." We believe the determination of proper parties to a permit does not involve the setting of a permit condition.

As used in the statute and the rule, the definition of "condition" does not include the addition of a party. The agency's rule states that the "permit must contain conditions necessary for the permitee to achieve compliance." Because the relators are now permitees, they cannot also be considered "conditions." We hold that the MPCA exceeded its statutory authority by naming an additional "party" to the permit as a "condition" of the permit. However, whether the naming of a party to a permit is a "condition" of the permit would be irrelevant if a parent corporation were so intertwined as to be considered a "person" as defined in the statute. Whether a parent corporation is a "person" who may be a permittee is discussed in the next issue.

## II.

Relator Cleveland–Cliffs argues that the MPCA erred in not holding a contested case hearing on the issue of naming the parent corporations as co-permitees. A contested case means:

a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional rights to be determined after an agency hearing.

Minn.Stat. § 14.02, subd. 3 (1986). For Cleveland–Cliffs to be entitled to a contested case hearing, the MPCA had to find that all of the following were met:

A. that a person requesting the contested case hearing has raised a material issue of fact or of the application of facts to law related to the director's preliminary determination or the terms of the draft permit;

B. that the agency has jurisdiction to make determinations on the issues of fact or of the application of facts to law raised by the person requesting the contested case hearing; and

C. that there is a reasonable basis underlying issues of fact or law raised by the person that requests the contested case hearing such that the holding of a contested case hearing would aid the agency in making a final determination on the permit application.

Minn.R. 7001.0130, subpt. 1 (1987).

We believe the MPCA erred in denying a contested case hearing for several reasons. Specifically, a contested case hearing is necessary to determine whether Hibbing Taconite is a financially viable corporation, whether long term pollution problems will result from the specific operation which is governed by this permit, whether the parent corporations are "persons" under the statute who may be parties to a permit, and whether the State of Minnesota has jurisdiction over these foreign parent corporations.

*Substantial evidence of corporate viability and pollution problems*

The agency found that relators had not presented any material issues of fact or the application of facts to law related to the commissioner's preliminary determination or terms of the draft permit. The agency concluded that there is no reasonable basis underlying issues of fact or law raised such that the holding of a contested case hearing would aid the agency in making a final determination on the permit application, because the ultimate issue is a policy question.

We agree with relators' contention that a contested case hearing was needed to determine specifically how the unpredictable business cycles of mining related to the parties to the permit. We disagree with the MPCA's claim that the decision to list a parent corporation as co-permitee depends on legislative facts which it can take administrative notice of, such as environmental problems and the condition of the mining industry.

We believe the MPCA's decision is not supported by the substantial evidence found in the record, and a contested case hearing is necessary to support the MPCA's findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Taylor v. Beltrami Electric Co-op., Inc.*, 319 N.W.2d 52, 56 (Minn.1982). The burden is upon the relators to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety. *Id.*

The MPCA based its decision to name parent corporations as co-permitees on two findings of fact, specifically, that the water discharge could create long term pollution problems and that due to the unpredictability of the mining industry a parent corporation is needed to carry out the long term obligations of the permit if the subsidiaries or the joint venture are incapable of such performance. We agree with relators' argument that speculation about future events without any facts in the record to support such speculation does not constitute substantial evidence.

The MPCA argues that it can take official or judicial notice of pollution problems and conditions in the mining in-

dustry. As the United States Supreme Court has stated, official notice of general matters of common knowledge may properly be taken. *Ohio Bell Telephone Co. v. Public Utilities Commission*, 301 U.S. 292, 301, 57 S.Ct. 724, 729, 81 L.Ed. 1093 (1937). However, official notice cannot constitutionally be used as a substitute for adjudicating specific facts and thereby dispensing with a hearing. *Id.* While it is true that the mining industry is subject to dramatic financial changes, there are no specific facts in the record to support the MPCA's allegations and finding that Hibbing Taconite would not be financially and technically viable in the future to deal with any pollution problems. Additionally, there is no evidence in the record as to the financial stability of the subsidiary corporations, the joint venture, or the parent corporations. The agency could not take official notice of the specific facts relating to Hibbing Taconite's financial viability. This is not a matter of common knowledge, as is the general condition of the mining industry.

Furthermore, the agency's conclusion that a parent corporation is needed is contrary to the other findings by the MPCA that the parent corporation and their subsidiaries are separate entities, and that the subsidiaries have the present financial capabilities to fulfill the terms of the permit.

■ The MPCA next argues that it is also a legislative fact that environmental problems will occur regardless of whether the mining operation continues. However, as we have previously stated, legislative facts are not helpful without more specific facts. Such facts are relevant, but not sufficient, to support the agency's finding and ultimately, its determination. Both relators argue that the permit is intended to allow water to be removed from a pit while mining is occurring. If the plant is not operating, the water will not have to be removed, but will merely remain in the pit as it presently does. The MPCA on the other hand, argues that the settling of water and its runoff and leaching are precisely its environmental concerns. This argu-

ment itself shows that a contested case is needed to determine the specific environmental effects of the use governed by this permit.

■ The MPCA additionally relied on the granting of other permits, in which parent companies were required to be co-permitees as a method for providing future assurance of compliance, as grounds for naming the parent corporations as co-permitees in this case. We are not persuaded that these prior permits are relevant evidence for the specific facts of the present case. The MPCA did not offer any underlying facts regarding its decisions in these other cases, nor is there evidence as to whether the companies received a contested case hearing prior to being listed as co-permitees.

We believe a contested case hearing is necessary to produce specific facts regarding long term pollution problems and the financial viability of Hibbing Taconite Company.

*Proper "person" to a permit*

The relators next argue that the parties to the permit are controlled by the statutory definition of "person" because the statute and the rules state that a person must have a permit in order to conduct various operations. *See* Minn.Stat. §§ 115.07 and 115.071. Under chapter 115 of Minnesota Statutes, a "person" is defined as:

> the state or any agency or institution thereof, any municipality, governmental subdivision, public or private corporation, individual, partnership, or other entity, including, but not limited to, association, commission or any interstate body, and includes any officer or governing or managing body of any municipality, governmental subdivision, or public or private corporation, or other entity.

Minn.Stat. § 115.01, subd. 10 (1986).

■ Under Minnesota law, the parties to a joint venture would be included as persons applying for the permit. Under joint venture law, any of the participants in

the joint venture is subject to liability and obligations of the joint venture as a whole. *See Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 208, 203 N.W.2d 841, 846 (1973). However, the relators argue that there is no law which would make a parent corporation liable for the obligations of its subsidiary which is part of the joint venture.

We believe that a separate parent corporation does not come under the definition of "person" as provided in Minn. Stat. § 115.01, subd. 10. A parent corporation is not the managing body of its subsidiary which is part of the joint venture. Minn.Stat. § 302A.201, subd. 1 (1986) states that the business and affairs of a corporation shall be managed by, or under the direction of, a board of directors. The standard rule of corporate organization is that the board of directors is the managing body, which normally carries out its function by delegating to and supervising the corporation's officers. *See* 2 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 505 (rev. perm. ed. 1982). A parent corporation is the stockholder of the subsidiary, and not the manager of the corporation's affairs. Each subsidiary corporation has its own separate board of directors which manages the subsidiary's affairs.

While it is true that the parent corporation is not technically the managing board of its subsidiary corporation, it could still come under the definition of "person" if the corporation and its subsidiary were found to be so intertwined as to be one entity. *See Victoria Elevator Co. v. Meriden Grain Co., Inc.*, 283 N.W.2d 509 (Minn.1979). However, such a finding depends upon certain facts which are not included in the administrative record, but which could be developed in a contested case hearing.

*Due process*

Relators argue that the MPCA violated the due process clause by naming them as co-permitees, without first having personal jurisdiction over them. Both relators claim that they are foreign corporations which do not have sufficient contact with the State of Minnesota to justify subjecting them to its regulations.

It is claimed that the relators have taken no action which can justify the MPCA imposing potential liability on them. Rather, the relators claim the liability arises out of their stock ownership. However, mere stock ownership is not a sufficient contact to gain personal jurisdiction over a party. *See Asarco, Inc. v. Idaho State Tax Commissioner*, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982). The MPCA could have jurisdiction over the parent corporations if these corporations were found to have minimum contacts with the state, so that the corporations purposely availed themselves of the privilege of conducting activities within the jurisdiction. *Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 719 (Minn.1985), *cert. denied, On–Deck, Inc. v. Rostad*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985).

Whether the parent corporations have minimum contact with the State of Minnesota is a fact question which cannot be answered from the administrative record. There is nothing in the record to show that the relators actually carried out any activities in Minnesota so as to subject them to the jurisdiction of this state. This issue should be determined in a contested case hearing or by further development of the administrative record.

*Policy decision*

While the MPCA claims that its decision to name the parent organizations as permitees is a policy and legal decision, and therefore no specific facts are necessary, it appears that this decision is a new policy of the MPCA. As MPCA board chairman, Langmo, conceded at the March 22, 1988 hearing:

> As we move into the world of more and more conglomerates, we're going to have to have a more, perhaps, a more definite policy on this * * *

Even if this were a policy decision, Cleveland–Cliffs and Bethlehem Steel had no notice that such policy existed, or was being developed.

Because this is not a general policy or legal question, there must be specific facts which support the MPCA decision concerning whether Hibbing Taconite is financially viable and a separate entity from the parent corporations. We believe such facts should have been developed at a contested case hearing.

### III.

Relator Cleveland–Cliffs claims that the MPCA created a previously unannounced policy, which was an evasion of the rulemaking procedure of the Administrative Procedure Act. Under the APA, a rule is defined as:

> every agency statement of general applicability and future effect, including amendments, suspensions, and repeals of rules, adopted to implement or make specific the law enforced or administered by it or to govern its organization or procedure.

Minn.Stat. § 14.02, subd. 4 (1986).

At the March 22, 1988 board meeting, the MPCA said that the decision whether the parent organizations should be named as permitees was a policy and legal decision. However, this policy is not found in the enabling statutes of the MPCA, nor in any rules promulgated by it. By the board chairman's own statement, it is clear that this policy is just developing.

Even though the MPCA claims that the policy is already in existence, the agency alternatively argues that it has the power to promulgate rules on a case by case basis. An agency may formulate policy by promulgating rules or by case by case determinations. The agency has discretion to decide what method is appropriate in a particular situation. *Bunge Corp. v. Commissioner of Revenue*, 305 N.W.2d 779, 785 (Minn.1981); *Reserve Life Insurance Co. v. Commissioner of Commerce*,

402 N.W.2d 631, 634 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. May 20, 1987).

However, we believe the present case is distinguishable from *Reserve* and *Bunge*, due to the nature of the statutes involved. In *Reserve*, the commissioner had the statutory duty to decide whether a given policy form was "unjust, unfair, inequitable, misleading * * *." 402 N.W.2d at 633. This court found that it would be nearly impossible to expect an agency to formulate in advance a rule which could rationally anticipate all of the various situations which would arise under this language. *Id.* at 634.

In *Bunge*, the supreme court was dealing with a specific tax statute and the revenue department's interpretation of it. The supreme court stated that in tax matters, a determination of the policy was based on facts as applied to a specific party. 305 N.W.2d at 784. However, we believe the present case requires that the rulemaking process be followed, because this is an important question of social and political policy. *McKee v. Likens*, 261 N.W.2d 566, 578 (Minn.1977).

In the present case, specific facts are not being applied to the specific parties. Rather, the agency has announced a broad policy whereby parent corporations will be listed as co-permitees with their subsidiary corporations. Such an unannounced policy by an administrative agency has been condemned by the Eighth Circuit as depriving the parties of fair notice of the agency's intentions. *See Oglala Sioux Tribe v. Andrus*, 603 F.2d 707, 718 (8th Cir.1979).

Under the APA, if an agency believes a policy needs to be formulated, it must express that policy in the form of a proposed rule accompanied by a detailed statement of need and reasonableness. Minn.Stat. § 14.131 (1986). The rulemaking provisions also allow public comments, a hearing, and a review; which is intended to insure that the rule, and the policy expressed, is within the scope of the enabling statute and is otherwise reasonable and

constitutional before it is implemented. *See* Minn.Stat. §§ 14.05–14.47 (1986).

The MPCA's policy has not been submitted to any of the procedures of the APA. Nor has this policy been decided on a case by case basis under the facts of the specific case and parties. Therefore, we find it was an improperly promulgated rule, and improperly decided on a case by case basis without considering specific facts.

In conclusion, although the MPCA's action in naming the parent corporations as co-permitees and therefore liable for any pollution in Minnesota, may be a good public policy decision, the agency did not follow proper procedures in making this decision. The MPCA's decision is not supported by the substantial evidence. Its finding that Hibbing Taconite is a viable company and separate from the parent companies conflicts with its ultimate conclusion that the parent corporation is needed to ensure compliance with the permit. Additionally, there are questions of fact which should have been answered in a contested case hearing regarding the financial capabilities and the true corporate identities of the co-permitees. Furthermore, because this is a new policy, the MPCA erred in creating a new rule without following the statutory procedures. We vacate the agency's order and remand for a contested case hearing or other further proceedings in accordance with this opinion.

*Motion to Add to the Administrative Record*

■ Relators move to strike certain documents from the administrative record, or in the alternative, to add two permits to the record. Because all of these documents are of public record, they will be allowed to be part of the administrative record and the record on this appeal.

Relator Cleveland–Cliffs also moves to add the affidavit of Franklin L. Hartman, corporate counsel for Cleveland–Cliffs, to the record. This affidavit will not be considered by this court because it was not part of the record before the MPCA and was created two months after the MPCA's final decision. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

### DECISION

The MPCA erred in naming foreign parent corporations as parties to a permit without first publishing its new policy, promulgating rules, or holding a contested case hearing.

REVERSED AND REMANDED.