In the Matter of the Appeal of Donald JONGQUIST of the Denial of Additional Vocational Rehabilitation Services.

No. C3–90–737.

Court of Appeals of Minnesota.

Sept. 25, 1990.

Stephen E. Scott, Client Assistance Project, Minneapolis, for relator Donald Jongquist.

Hubert H. Humphrey, III, Atty. Gen. and Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondent Div. of Rehabilitation Services.

Considered and decided by FOLEY, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Relator Donald Jongquist seeks review of a decision by respondent, the Minnesota Department of Jobs and Training, Division of Rehabilitation Services (DRS). The DRS determined that Jongquist was required to obtain a student loan to pay for a portion of his rehabilitative training costs authorized by the DRS. We conclude the DRS erred by applying a rule not properly promulgated under the Administrative Procedure Act and, accordingly, we reverse and remand to the DRS for payment of the disputed costs.

## FACTS

The Rehabilitation Act of 1973 allows a state to receive financial assistance from the federal government to administer a vocational rehabilitation program to assist disabled individuals. *See* 29 U.S.C. § 720 (1988). Minnesota has developed a vocational rehabilitation program, which is administered by the DRS.

Jongquist suffered a back injury in October 1988, and applied to the DRS for rehabilitative assistance. In the spring of 1989, the DRS determined that Jongquist was a disabled person eligible to receive assistance from the program.

In April 1989, Jongquist and the DRS prepared an individualized rehabilitation plan, which proposed that Jongquist attend college at Bemidji State University and obtain a degree in business administration and computer science.

The financial aid office at Bemidji State prepared a financial aid package for Jongquist totaling $6,806 per year. The package consisted of $1,650 from DRS funds, $2,531 from grants, and $2,625 from a guaranteed student loan.

Jongquist objected to the requirement that he obtain a student loan, claiming that he had already accumulated too many debts and that the DRS did not have the authority to require him to obtain a loan.

An administrative law judge, after conducting a hearing, determined that Jongquist should not be required to procure a loan to finance his training. On appeal, the Director of the DRS reversed, concluding the DRS had the discretion to require Jongquist to obtain a loan. Jongquist has obtained a writ of certiorari, seeking review of the Director's decision.

## ISSUE

Did the DRS engage in improper rule-making when it determined that Jongquist was required to obtain a loan to fund a portion of his rehabilitative training program?

## ANALYSIS

Our review of the DRS' decision is governed by Minn.Stat. § 14.69 (1988). We will reverse if the decision exceeds the DRS' statutory authority or jurisdiction or if the decision is affected by other error of law. Minn.Stat. § 14.69(b), (d).

■ Minn.Stat. § 129A.03(b) (1988) requires the Commissioner to "provide vocational rehabilitation services to persons with disabilities in accordance with the state plan." Vocational rehabilitation services include training in institutes of higher education. 29 U.S.C. § 723(a)(3) (1988).

Jongquist concedes the DRS has the discretion to require training program participants to obtain loans. Jongquist argues,

however, that before the DRS may require him to assume a loan, the DRS must first promulgate rules and criteria pursuant to the Minnesota Administrative Procedure Act (APA), Minn.Stat. § 14.01–70 (1988).

"Rule" means every agency statement of general applicability and future effect, including amendments, suspensions, and repeals of rules, adopted to implement or make specific the law enforced or administered by it or to govern its organization or procedure.

Minn.Stat. § 14.02, subd. 4 (1988).

The Minnesota Legislature has directed the DRS to promulgate rules regarding the vocational rehabilitational services it provides:

The commissioner shall:

\* \* \* \* \* \*

adopt, amend, suspend, or repeal rules necessary to implement or make specific programs that the commissioner \* \* \* is empowered to administer.

Minn.Stat. § 129A.03(n) (1988). Despite this mandate, the DRS has promulgated no rules or procedures for determining when a recipient of benefits must take out a loan.

Minn.Stat. § 14.06 (1988) also requires the DRS to adopt rules regarding its procedures for administering funds:

Each agency shall adopt rules, in the form prescribed by the revisor of statutes, setting forth the nature and requirements of all formal and informal procedures related to the administration of official agency duties to the extent that those procedures directly affect the rights of or procedures available to the public.

Here, we believe the DRS' procedures "directly affect the rights of or procedures available to the public":

In questions of social and political importance such as the allocation of resources to the disabled, an opportunity for participation by all interested parties, as required by Minn.Stat. § 14.14, subd. 1 (1982) is both necessary and desirable.

*Swenson v. State*, 329 N.W.2d 320, 324 (Minn.1983).

Federal regulations provide that if a state program takes into consideration an individual's financial need, the state must maintain written policies in order to provide equitable treatment to those similarly situated. 34 C.F.R. § 361.47(a)(2) (1988). While the Minnesota program indicates the DRS will not consider the financial need of a client, requiring Jongquist to obtain a loan in effect involves consideration of his financial need and abilities. We conclude the DRS has no authority to require disabled persons to take out loans in the absence of rules promulgated pursuant to the APA.

 We recognize that an agency may, in its discretion, formulate policy on a case-by-case basis instead of promulgating rules. *In re Hibbing Taconite Co.*, 431 N.W.2d 885, 894 (Minn.App.1988). In *Hibbing Taconite*, the Minnesota Pollution Control Agency had determined that parent corporations, as well as their subsidiaries, should be made parties to a permit. The *Hibbing Taconite* court concluded this action constituted a policy required to be promulgated as a rule pursuant to the APA. *Id.* at 895. The court reasoned that the rulemaking process, rather than a case-by-case process, should be followed because by its actions the MPCA had "announced a broad policy whereby parent corporations [would] be listed as co-permittees with their subsidiary corporations". *Id.* at 894. The court also concluded the rulemaking process should be followed because the MPCA's actions involved "an important question of social and political policy". *Id.*

Similarly, we conclude a case-by-case approach would be inappropriate here. By requiring Jongquist to obtain a loan, the DRS has evidenced its intention to implement a policy requiring some disabled individuals to obtain loans instead of receiving DRS funds. Again, the allocation of resources to the disabled is a question of social and political importance. *Swenson*, 329 N.W.2d at 324. Such policy should be promulgated in accordance with APA rulemaking procedures:

The purpose of the Administrative Procedure Act is to ensure that we have a government of law and not of men. Under that act, administrative officials are not permitted to act on mere whim, nor their own impulse, however well-intentional they might be, but must follow due process in their official acts and in the promulgation of rules defining their operations.

*Monk & Excelsior, Inc. v. Minn. State Board of Health*, 302 Minn. 502, 509–10, 225 N.W.2d 821, 825 (1975).

## DECISION

The DRS erred by requiring Jongquist to assume a loan without first promulgating such policy as a rule pursuant to the APA. We reverse and remand to the DRS for payment to Jongquist of the training expenses for which he has not received grants or direct DRS reimbursement.

Reversed and remanded.