Lucy EVENSON, Appellant,

v.

MINNESOTA DEPARTMENT OF HUMAN SERVICES, Scott County Human Services, Respondents.

No. C6–92–459.

Court of Appeals of Minnesota.

Aug. 4, 1992.

Gen., St. Paul, for respondent Minn. Dept. of Human Services.

James A. Terwedo, Scott County Atty., Brian A. Nasi, Neal Nelson, Asst. County Attys., Shakopee, for respondent Scott County Human Services.

Considered and decided by HARTEN, P.J., and KALITOWSKI and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Acting Judge.*

Lucy Evenson appeals from a district court decision affirming the Commissioner of Human Services' denial of her application for Minnesota Supplemental Aid (MSA). On appeal, Evenson argues that the commissioner did not have the legal authority to require her to obtain renters for her property as a condition of receiving MSA. We agree and reverse.

## FACTS

Lucy Evenson is a 90–year–old woman. In December 1986, Evenson quit-claimed her homestead to her daughter, Katherine Weisser, reserving a life estate in the home. The homestead was located in Scott County, Minnesota. Evenson lived there until January 1989, when she moved to Auburn Manor, a boarding care facility located in Carver County.

For the first year while Evenson lived at Auburn Manor, the costs of her care were paid by Carver County. The life estate property apparently was left vacant, except for a period of time when a relative lived there.

In 1990, the authorities discovered that Evenson owned a life estate in the Scott County property. Accordingly, Evenson was told that she must apply for assistance in Scott County, instead of Carver County. On July 2, 1990, Evenson applied to Scott County for Minnesota Supplemental Aid (MSA).

An individual is eligible to receive MSA only if the value of her non-exempt re-

James J. Street, Southern Minn. Regional Legal Services, Inc., Prior Lake, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Patricia A. Sonnenberg, Sp. Asst. Atty.

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

sources is no more than $2,000.[1] At the time Evenson applied for MSA, she had a burial account, which was exempted as a resource for MSA purposes, a checking account with a balance of approximately $700, and the life estate.

On August 13, 1990, the county sent Weisser a letter stating that Evenson's life estate had been valued at $19,595.47, and that her total resources therefore exceeded the $2,000 resource limit for MSA purposes.[2] The letter stated that if Evenson wished to receive MSA, she must reduce her property to the allowable program limits by August 23, 1990. The letter cautioned that Evenson could not give away or sell any property for less than the market value. The letter stated:

> If you feel that the life estate could not be sold due to a specific condition, you could provide statements from two knowledgeable sources indicating that the life estate interest cannot be sold. If the life estate interest is determined not to be salable, it could be excluded from * * * the MSA * * * resource limits.

As an alternative, the letter indicated that Evenson could sign a repayment agreement and make a good faith effort to sell the life estate interest.

Weisser did not sign the repayment agreement, but obtained legal assistance. In September 1990, Weisser's legal representative began seeking realtors' appraisals of the property and the life estate. The process took several months, and the county finally denied Evenson's application for MSA on October 15, 1990, after granting her several extensions.

Evenson appealed the denial of benefits, and a referee with the Minnesota Department of Human Services conducted a hearing on January 10, 1991. Several days before the hearing, two realtors submitted letters valuing the life estate. One realtor was willing to pay $2,550 for an assignment of the life estate. He stated in his letter:

> I am aware that the property is currently being rented at the amount of $600.00 per month. The utilities are to be paid by the tenants. Considering that the property is rented and after examining the rental agreement, and life estate, I would be willing to pay in the amount of $2,550.00 for an assignment of the life estate.

Another realtor was willing to pay $2,400, under the same conditions. Subsequently, however, both realtors discovered that there were no tenants currently renting the property. Accordingly, the realtors submitted letters disavowing any interest in the property. One realtor explained:

> During our conversation, I discovered that the property did not, in fact, have tenants. This fact dramatically changes my opinion about the value of the life estate. My previous estimate was based on the fact that the property was currently rented out for $600.00 per month. Since the property is not rented out at all, I would have no interest in purchasing the life estate, nor, in my opinion, is the life estate even salable. In other words, this life estate has no market value.

The content of the other realtor's letter was similar.

The realtors' letters were introduced into evidence at the hearing, and the referee heard testimony by the parties. Weisser testified that she was willing to sign a repayment agreement, but she did not remember receiving it with the county's August 13, 1990 letter. Weisser also testified that she had tried to purchase the life estate when it had been valued at $19,595.47; however, she had been unable to obtain financing. The county agreed to a reduced value of $2,550, but refused to accept the $0.00 valuation by the realtors.

Following the hearing, the referee issued findings of fact, conclusions of law, and a recommended order. The referee concluded:

---

**1.** Minn.Stat. § 256D.425, subds. 1, 2 (1990); 42 U.S.C.A. § 1382(a)(1)(B); (3)(B).

**2.** The letter also discussed Evenson's eligibility for medical assistance (MA), but Evenson's entitlement to MA is not an issue on appeal.

The absence of rental income to make this property marketable is a condition * * * which can be readily altered, and which petitioner would have been required to alter under a property repayment agreement. The absence of renters does not render the property interest defective in some way, unless there were evidence that the * * * property is not habitable for renters, or that there is no market for renters. Because obtaining rental income on the property presents no known barrier, the property does not qualify as not salable. The property is in fact marketable, based upon the offers of 2 real estate agents in the area who would purchase the property with rental income.

The referee concluded that Evenson was ineligible to receive MSA until she signed the repayment agreement. The referee noted, however, that because Evenson had indicated at the hearing that she was willing to sign the repayment agreement, she should be allowed to establish eligibility as of the hearing date.

The Commissioner of Human Services adopted the referee's recommended findings, conclusions and order, and Evenson appealed to the district court. On December 9, 1991, the court issued its order sustaining the commissioner's decision. Evenson has appealed from the judgment entered pursuant to the court's order.

## ISSUES

1. Did the commissioner err by valuing Evenson's life estate at $2,550?

2. Did the commissioner err by finding that Evenson could obtain rental income on the property?

3. Should the revaluation of Evenson's life estate relate back to the date of Evenson's application for MSA?

3. The commissioner relied on Minn.R. 9505.-0059, subp. 1B(1) (1991), defining "not salable" as meaning: "Two sources agree that the property is not salable due to a specified condition." The commissioner apparently concluded that Evenson's property was salable because the ab-

## ANALYSIS

■■■ Our review of a decision by the Department of Human Services is governed by Minn.Stat. § 14.69 (1990). *Mammenga v. Department of Human Servs.*, 442 N.W.2d 786, 789 (Minn.1989). Pursuant to section 14.69, we must determine whether the commissioner's decision is in violation of constitutional provisions, in excess of the commissioner's statutory authority or jurisdiction, made upon unlawful procedure, affected by other error of law, unsupported by substantial evidence, or arbitrary or capricious. *Id.* We are not bound by the district court's decision, but may conduct an independent review of the commissioner's decision. *See Fisher Nut Co. v. Lewis*, 320 N.W.2d 731, 733–34 (Minn.1982); *In re Signal Delivery Serv., Inc.*, 288 N.W.2d 707, 710 (Minn.1980). The MSA statutes are remedial, and therefore must be construed liberally in favor of awarding benefits. *Cf. Sanders v. Celebrezze*, 225 F.Supp. 836, 839 (D.Minn.1963) (disability insurance benefits are remedial and statute must be construed liberally); *Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384, 385 (Minn.1980) (unemployment compensation statutes are remedial in nature and must be liberally construed).

## I.

■■■ The commissioner concluded that Evenson's life estate had a value of $2,550 if it were rented, and that there was no barrier to obtaining renters.[3] Evenson argues that the commissioner erred by valuing her life estate at $2,550. We agree. The undisputed evidence demonstrates that at the time of the hearing, the value of the property in its current unrented condition was $0.00. Two real estate appraisals stated that with no renters, the life estate had no value.

The MSA eligibility statutes reference the eligibility provisions of the federal supplemental security (SSI) laws. *See* Minn.

sence of renters did not constitute the requisite "specified condition."

It should be noted that Minn.R. 9505.0059 is a rule governing the administration of medical assistance, and not MSA. Accordingly, the rule is not applicable here.

Stat. § 256D.425, subds. 1, 2 (1990). Under the SSI regulations, "[i]f a property right cannot be liquidated, the property will not be considered a resource of the individual." 20 CFR § 416.1201(a)(1) (1990). A resource determination is based on its value as of the first moment of the month in which the resource determination is made. 20 CFR § 416.1207(a) (1990). The regulations do not suggest that market value should be determined based on the property's potential.

■ Nor is there any Minnesota statute or rule requiring that a life estate's potential value be considered in determining whether the life estate is salable. Other courts have addressed the valuation of property for SSI and other federal assistance program purposes. Those cases suggest that property should be valued at its current, not potential, value. *See, e.g., Davis v. Department of Pub. Health & Welfare,* 483 S.W.2d 775, 778 (Mo.App. 1972) (court concluded that there was no market for a 68–year–old woman's life estate because the cost of restoring the property and the claimant's advanced age rendered the property valueless); *Fraher v. Department of Pub. Health & Welfare,* 484 S.W.2d 663, 666–67 (Mo.App.1972) (court examined present value of a contract for deed, rather than its potential market value, and concluded that there was no current market value); *Jansen v. Department of Pub. Welfare,* 201 Neb. 185, 266 N.W.2d 742, 745 (1978) (court concluded that a trust beneficiary did not have an available interest in a discretionary trust, since without obtaining a court order, the beneficiary could not compel the trustee to make payments from the trust fund); *cf. McNiff v. Olmsted County Welfare Dep't,* 287 Minn. 40, 176 N.W.2d 888, 892 (1970) (where a beneficiary of a trust may compel a trustee to disburse at least a portion of the trust assets for her benefit, the right sufficiently qualified the trust as a re-

source rendering the beneficiary ineligible for medical assistance).

■ Evenson argues that she did not receive prior notice that the commissioner would require her to rent the property for MSA valuation purposes. Indeed, there is no evidence that either Evenson or Weisser received prior notice that the market value of the life estate would be determined based on its value with renters.

Evenson's notice argument raises a troubling issue; i.e., whether the commissioner's valuation of the property as rented constituted an unpromulgated rule. In fact, there are no department rules indicating the factors that should be considered when valuing any type of resource for MSA purposes. Although the legislature has stated that the commissioner "shall adopt permanent rules consistent with law for carrying out and enforcing the provisions of [the MSA Act] so that Minnesota supplemental aid may be administered as uniformly as possible throughout the state" (Minn.Stat. § 256D.53 (1990), the commissioner has not promulgated rules pursuant to the statutory mandate.[4]

A "rule" is defined as "every agency statement of general applicability and future effect * * * adopted to implement or make specific the law enforced or administered by that agency or to govern its organization or procedure." Minn.Stat. § 14.02, subd. 4 (1990). In *In re Jongquist,* 460 N.W.2d 915, 917 (Minn.App.1990), this court concluded that the Department of Jobs and Training, Division of Rehabilitative Services (DRS), had no authority, in the absence of rules, to require a disabled person to take out a loan as a condition of receiving assistance under the Rehabilitation Act. The *Jongquist* court concluded that the DRS's decision regarding the allocation of resources to the disabled "directly affect[ed] the rights of or procedures available to the public." *Id.* at 916. The court reasoned:

---

4. Prior to the enactment of Minn.Stat. § 256D.53, and pursuant to prior statutory authority, the commissioner did enact rules. *See* Minn.R. 9500.0650–.0710 (1991). Those rules, however, were promulgated pursuant to statu-

tory authority which was subsequently revoked. *See* Minn.Stat. § 256D.41 (1988), repealed 1989 Minn.Laws ch. 282, art. V, § 133. Accordingly, it is doubtful whether the old rules remain effective.

By requiring Jongquist to obtain a loan, the DRS has evidenced its intention to implement a policy requiring some disabled individuals to obtain loans instead of receiving DRS funds. Again, the allocation of resources to the disabled is a question of social and political importance. Such policy should be promulgated in accordance with APA rulemaking procedures.

*Id.* at 917 (citation omitted). Similarly, here, by requiring Evenson to rent out her property, the commissioner has evidenced an intent to implement a policy that some people must rent their property to make it marketable for MSA purposes. Under the reasoning of *Jongquist*, we construe the commissioner's policy as an unpromulgated rule, and therefore invalid.

## II.

Evenson also challenges the commissioner's finding that "[b]ecause obtaining rental income on the property presents no known barrier, the property does not qualify as not salable."

In light of our decision above, we need not address this issue. We do note, however, that there was no evidence regarding whether Evenson was capable of advertising, interviewing tenants, or arranging to rent the property, or how much the cost would be for her or someone else to handle the rental arrangements. As one court has stated regarding the requirements for obtaining disability insurance: "We deal here with a hard and unfortunate reality of life. We may not ignore that reality." *Marion v. Gardner*, 359 F.2d 175, 181 (8th Cir. 1966). The reality in the present case is that Evenson is 90 years old and is in a boarding care facility. Her ability to rent the property is certainly questionable.

## III.

■ The commissioner refused to apply the life estate's reduced value retroactively to the date of Evenson's application for benefits. The commissioner believed that if Evenson had wanted the reduced value to be retroactive, she should have signed the repayment agreement in August 1990.

Initially, we note that it was unrealistic for the county to prepare a repayment agreement valuing the life estate of a 90–year–old woman at $19,595.47. Contrary to the county's arguments, there is no evidence that Evenson would be allowed to sign the agreement and later negotiate a lower value of the life estate.

In any event, we adopt the reasoning of several courts that a revaluation of property should relate back to the date of application. *See, e.g., Board of Social Welfare v. Los Angeles County*, 27 Cal.2d 81, 162 P.2d 630, 633 (1945); *Marshall v. Department of Pub. Health & Welfare*, 485 S.W.2d 693, 696 (Mo.App.1972); *Luithle v. Burleigh County Social Servs.*, 474 N.W.2d 497, 501 (N.D.1991); *Conant v. State*, 197 Wash. 21, 84 P.2d 378, 381 (1938). The evidence established that in January 1991, the life estate had no value without renters. The condition of the property had not changed between August 1990 and January 1991. We therefore conclude that, as a matter of law, the value of the life estate at the time of Evenson's application for MSA was $0.00.

## DECISION

The undisputed evidence indicates that the value of Evenson's life estate is $0.00. In the absence of a properly promulgated rule, the commissioner did not have the authority to determine a greater value, based on a requirement that Evenson obtain renters. In addition, the record does not support the commissioner's determination that the property was rentable. The $0.00 value of the life estate relates back to the time of Evenson's application for benefits.

Reversed.