45 F.3d 243
 Prod.Liab.Rep. (CCH) P 14,117
Debra COOPER, Trustee for the Surviving next of kin of
Jeremey Joe Cooper, deceased; Debra Cooper,
Trustee for the Surviving next of kin of
Jarrod James Cooper, deceased,
Plaintiffs-Appellants,
v.
LAKEWOOD ENGINEERING AND MANUFACTURING COMPANY; McMillan
Manufacturing Company, Defendants,
W.W. Grainger, Inc., Defendants-Appellees.
 No. 94-2204.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 18, 1994.
Decided Jan. 6, 1995.
 
 James E. Nicolai, Moorhead, MN, argued (Galen J. Vaa, on the brief), for appellants.
 James Anderson O'Neal, Minneapolis, MN, argued (Christin Eaton Garcia, on the brief), for appellees.
 Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and CAMPBELL,* Senior Circuit Judge.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 Debra Cooper, acting as trustee for the surviving next of kin of Jeremey Joe Cooper and Jarrod James Cooper, appeals from a grant of summary judgment in favor of W.W. Grainger, Inc., in a wrongful death action. She claims that the district court[1] erred in failing to recognize triable issues of fact that could result in a judgment in her favor on the basis of either corporate successor liability or parent/subsidiary liability. We affirm.I.
 
 
 2
 On July 21, 1991, two of Debra Cooper's sons died in a fire that destroyed the family's trailer home in Glyndon, Minnesota. A deputy state fire marshal and the Coopers' insurance company both believed that the likely cause of the fire was an electric box fan manufactured by Lakewood Engineering and Manufacturing Company, although they differed as to which fan component was at fault.
 
 
 3
 Prior to 1976, McMillan Electric Company [MEC] and McMillan Manufacturing Company [MMC] were both manufacturers of electric motors and alleged suppliers of motors to Lakewood. W.W. Grainger, Inc., an industrial parts and products distributor, acquired all of the capital stock of MMC on August 1, 1972. Grainger and MMC agreed to voluntary dissolution of MMC under the Minnesota Business Corporations Act, Minn.Stat. Sec. 301.47 (since replaced by Minn.Stat. Secs. 302A.721 and 302A.723). In addition, Grainger and MMC executed an assumption of liabilities agreement, which states:
 
 
 4
 Grainger hereby assumes and unconditionally agrees to pay and discharge, at the time and in the manner as [MMC] is obligated so to do, but only the extent of the property and assets distributed to Grainger by [MMC] pursuant to the dissolution of [MMC], any and all of the obligations, duties, liabilities, taxes, unemployment contributions, fees, and debts of [MMC], contingent or absolute, accrued or unaccrued, or that may be properly assessable against [MMC].
 
 
 5
 The dissolution of MMC became effective on November 8, 1976. Pursuant to Minn.Stat. Sec. 300.59 (since replaced by Minn.Stat. Sec. 302A.781), MMC remained liable to suit for a three-year period terminating on November 8, 1979.
 
 
 6
 The wrongful death action brought by Cooper alleged strict liability and negligence against Lakewood, MEC, MMC, and Grainger. Lakewood moved for summary judgment, which was denied, and subsequently settled with Cooper. MEC was dismissed from the case by the stipulation of the parties. Grainger successfully moved for summary judgment. We review de novo. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir.1989).
 
 II.
 
 7
 Cooper argues that there are significant questions of material fact as to whether Grainger is liable under the corporate successor doctrine. The Supreme Court of Minnesota has identified four circumstances under which a successor corporation may be held liable for the actions of a transferor corporation:
 
 
 8
 (1) where the purchaser expressly or impliedly agrees to assume such debts;
 
 
 9
 (2) where the transaction amounts to a consolidation or merger of the corporation;
 
 
 10
 (3) where the purchasing corporation is merely a continuation of the selling corporation; and
 
 
 11
 (4) where the transaction is entered into fraudulently in order to escape liability for such debts.
 
 
 12
 Niccum v. Hydra Tool Corp., 438 N.W.2d 96, 98 (Minn.1989) (citing J.F. Anderson Lumber Co. v. Myers, 296 Minn. 33, 206 N.W.2d 365, 368 (1973)). Cooper urges application of the first theory of corporate successor liability, alleging that Grainger both expressly and impliedly agreed to assume MMC's liabilities.
 
 A.
 
 13
 The claim of express assumption of liability rests on the language of the agreement between Grainger and MMC, which establishes Grainger's obligation to discharge MMC's liabilities "at the time and in the manner as [MMC] is obligated so to do." Cooper claims that the phrase "at the time and in the manner" may be construed as merely describing Grainger's obligations to pay MMC's debts when they become due and by an appropriate method, rather than as limiting Grainger's liability. Under Minnesota law, whether a contract is ambiguous is a question of law, and ambiguity is defined as reasonable susceptibility to more than one meaning. Blattner v. Forster, 322 N.W.2d 319, 321 (Minn.1982). After reviewing the agreement between Grainger and MMC, we conclude that the only reasonable meaning is to limit Grainger's liability to the statutory period of time during which MMC continued to be responsible for its debts and other obligations. Grainger clearly did not intend to assume liability for MMC in perpetuity. As MMC's own liability expired over a decade before the accident occurred, see Minn.Stat. Sec. 300.59, Grainger's liability did not extend to Cooper's claim. The district court correctly concluded as a matter of law that there was no express assumption of liability.
 
 B.
 
 14
 The claim of implied assumption of liability rests on the contention that Grainger maintained liability insurance for MMC products and settled lawsuits involving MMC after MMC's statutory liability had expired, thereby creating a contract implied in fact. An implied contract is one inferred from the circumstances and conduct of the parties. Gryc v. Lewis, 410 N.W.2d 888, 891 (Minn.Ct.App.1987) (citing Roberge v. Cambridge Co-op. Creamery Co., 248 Minn. 184, 79 N.W.2d 142, 146 (1956)). Like other contracts, it requires a "meeting of the minds." Id. Any decision by Grainger to continue liability insurance or settle claims after MMC's dissolution was necessarily a unilateral one, as MMC no longer existed and could not assent. Thus the district court correctly determined as a matter of law that Grainger did not assume liability by implication.
 
 III.
 
 15
 Cooper also contends that she is entitled to a jury trial to determine whether Grainger is liable under either a parent-subsidiary theory of corporate liability or the instrumentality doctrine, originally a theory of shareholder liability. Minnesota's intermediate appellate court has used the language of the instrumentality doctrine in reference to the parent-subsidiary relationship as well. See Matter of Hibbing Taconite Co., 431 N.W.2d 885, 893 (Minn.Ct.App.1988); Erickson v. Curtis Investment Co., 432 N.W.2d 199, 202 (Minn.Ct.App.1988), aff'd, 447 N.W.2d 165 (Minn.1989). Piercing the corporate veil in Minnesota requires "(1) analyzing the reality of how the corporation functioned and the defendant's relationship to that operation, and (2) finding injustice or fundamental unfairness." Minnesota Power v. Armco, Inc., 937 F.2d 1363, 1367 (8th Cir.1991). Minnesota's application of the instrumentality doctrine to the parent-subsidiary relationship merely refines the first requirement for piercing the veil by asserting that a parent and its subsidiary may be considered one entity if they are sufficiently intertwined. Matter of Hibbing Taconite Co., 431 N.W.2d at 893, (citing Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 509 (Minn.1979)). Since MMC had been dissolved and its statutory liability had expired prior to Cooper's claim, it is meaningless to inquire into the existence of an appropriately separate parent-subsidiary relationship or lack thereof. To meet the second requirement for piercing the veil, moreover, the plaintiff must present "evidence that the corporate entity has been operated as a constructive fraud or in an unjust manner." White v. Jorgenson, 322 N.W.2d 607, 608 (Minn.1982) (citing West Concord Conservation Club v. Chilson, 306 N.W.2d 893, 898 n. 3 (Minn.1981)). There is simply no evidence in the record to indicate that Cooper is the victim of constructive fraud or injustice. Therefore, the district court correctly found as a matter of law that Grainger could not be held liable by piercing the corporate veil.
 
 IV.
 
 16
 For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Grainger.
 
 
 
 *
 The HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit Judge for the First Circuit, sitting by designation
 
 
 [1]
 The Honorable Richard H. Kyle, U.S. District Judge for the District of Minnesota