Forest O. **WILSON**, Plaintiff,

v.

**AMERICAN RED CROSS, NORTHLAND CHAPTER, and North Central Life Insurance Company, a Minnesota Corporation, Defendants.**

No. CIV. 99–721 RLE.

United States District Court,
D. Minnesota.

Aug. 2, 2000.

James Walter Balmer, Falsani Balmer Berglund & Peterson, Duluth, MN, Richard E. Prebich, Prebich Law Office, Hibbing, MN, for Forest O. Wilson.

Elizabeth A. Storaasli, Lisa Danelle Wilson, Bye Angnew Dryer & Storaasli, Duluth, MN, for American Red Cross, Northland Chapter.

Steven Wayne Schneider, Diana Lynn Bouschor Dodge, Halverson Watters Downs Reyelts, & Bateman, Duluth, MN, for North Central Life Ins. Co.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge

pursuant to the consent of the parties, made in accordance with the provisions of Title 28 U.S.C. § 636(c), upon the Defendants' Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment.

A Hearing on the Motion was conducted on February 8, 2000, at which time, the Plaintiff appeared by James W. Balmer, Esq.; the Defendant North Central Life Insurance Company ("North Central") appeared by Steven W. Schneider, Esq.; and the Defendant American Red Cross, Northland Chapter ("Red Cross"), appeared by Elizabeth A. Storaasli, Esq.

For reasons which follow we grant the Defendants' Motion for Summary Judgment.[1]

## II. *Factual and Procedural Background*

The Plaintiff, and his now-deceased spouse—Doris Wilson ("Mrs. Wilson")—purchased two, single premium deferred annuity policies—Policy Nos. 8249393 and 8249404—from North Central, in June of 1988. *Affidavit of Peter M. Ocel, Ex. A.* As joint owners of the annuity policies, the Wilsons named Mrs. Wilson as the annuitant, *id.,* and the Plaintiff was named as the primary beneficiary. *Id.* The Wilsons did not name a contingent beneficiary.

On November 4, 1989, the Wilsons named their four children as beneficiaries of the annuity, and accomplished this change in designation through a written request to North Central which, in relevant part, read as follows:

We have decided to change our [sic] status of our ANNUITS. We want our policies to be paid on DEATH to our children.

*Affidavit of Diana Bouschor Dodge, Ex. A.*

The letter then identified the Wilsons' policies, and listed the names and addresses of the Wilsons' children. The letter was executed by both the Plaintiff and Mrs. Wilson. *Id.* Once again, however, the Wilsons did not name a contingent beneficiary to their policies. *Id.* Nor did the Plaintiff, on the face of the letter of November 4, 1989, retain any beneficiary interest in the policies. *Id.*

On January 6, 1995, the Wilsons completed a form which requested the withdrawal of all of the annuity funds in both policies but, within a week or so, they had changed their minds, and informally advised North Central that they only wished to close out Policy No. 8249393. North Central honored that request, "cashed out" Policy No. 8249393, and transmitted the proceeds to the Wilsons.

On March 3, 1997, Mrs. Wilson named a new beneficiary to the policies. Again, the change was submitted in writing. *Dodge Aff., Ex. B.* On this occasion, however, the change was submitted on a "Beneficiary Change Form" which, it appears, Mrs. Wilson had requested from North Central. *Id.* On that form, Mrs. Wilson named the Red Cross as a beneficiary and, again, omitted any designation of a contingent beneficiary. *Id.*

Thereafter, following the death of Mrs. Wilson on January 12, 1999, the Plaintiff wrote to North Central, and requested that the annuity "pay on death" to: Mrs.

---

1. The Red Cross has joined in the Motion of North Central, see, *Docket No. 30,* and both seek to employ the last sentence of Rule 12(b), Federal Rules of Civil Procedure, which provides as follows:

   If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given

   reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

   Here, the parties have presented materials outside of the pleadings, which we have considered in resolving the dispute between them and, therefore, we analyze the Defendants' Motion under the strictures of Rule 56, Federal Rules of Civil Procedure. See, *Deuser v. Vecera,* 139 F.3d 1190, 1191 n. 3 (8th Cir. 1998); *Chantal v. United States,* 104 F.3d 207, 209 (8th Cir.1997).

Elva Benglson, Steve Blomberg, and Nora Kamel, who, we are informed, are the siblings of the Plaintiff. *Dodge Aff., Ex. C.* Shortly after the death of Mrs. Wilson, the Red Cross was notified of its beneficial interest in the annuity, and it demanded that North Central pay to it the annuity funds. The Plaintiff opposed that demand and, given the competing claims to the annuity, North Central withheld payment to either the Plaintiff, or to the Red Cross.

Thereafter, on May 11, 1999, the Plaintiff filed a Complaint in this Court, in which he claimed that the original, deferred annuity contracts were ambiguous in their terms, and misled him, and his wife, to subsequently designate the Red Cross as the primary beneficiary of the annuities, on the Change of Beneficiary form. *Complaint* ¶ 9. Instead of that designation, the Plaintiff alleges that it was his intention, as well as that of his wife, to designate the Red Cross as a contingent beneficiary, to whom payment would only be made upon the deaths of both he and his wife. As a result, the Plaintiff here seeks a declaration, that he is the rightful beneficiary to the annuities, a judicial reformation of the beneficiary designation so as to rename him as the primary beneficiary, and the creation of a constructive trust on the annuities' funds, for his benefit.

In support of his claim, the Plaintiff contends that the annuity policies define some terms, but omit any definition of the terms "primary beneficiary," or "contingent beneficiary." *Ocel Aff., Ex. E.* In addition, he notes that the policies provided for the changing of beneficiary designations, but did not detail the means to do so, other than to require that such a change be accomplished by means of a written request. *Id.* In contrast, the Defendants maintain that the policies in question are free from ambiguity, and they assert that, in the absence of a genuine and material factual dispute—as to the Red Cross's entitlement to the annuity proceeds—the Court should grant them Summary Judgment, which awards them the annuity proceeds.

Given this factual and procedural background, we turn to a consideration of the parties' arguments.

### III. *Discussion*

A. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, *Hunt v. Cromartie,* 526 U.S. 541, 548, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999); *Carter v. St. Louis Univ.,* 167 F.3d 398, 400 (8th Cir.1999); *Prudential Ins. Co. v. Nat'l Park Med. Center, Inc.,* 154 F.3d 812, 818 (8th Cir.1998). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Liebe v. Norton,* 157 F.3d 574, 578 (8th Cir.1998); *Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in * * * Rule [56], must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure; Lambert v.*

*City of Dumas,* 187 F.3d 931, 934 (8th Cir.1999); see, *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1029 (8th Cir. 2000) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 805, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), quoting, *Celotex Corp. v. Catrett,* supra at 322, 106 S.Ct. 2548; see also, *Greer v. Shoop,* 141 F.3d 824, 826 (8th Cir.1998); *Mayard v. Hopwood,* 105 F.3d 1226, 1228 (8th Cir.1997). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* supra at 323, 106 S.Ct. 2548; see also, *Brower v. Runyon,* 178 F.3d 1002 (8th Cir. 1999); *Bell Lumber and Pole Co. v. United States Fire Ins. Co.,* 60 F.3d 437, 441 (8th Cir.1995); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross,* 992 F.2d 162, 163 (8th Cir.1993).

■ B. *Legal Analysis.* Central to the Plaintiff's request for declaratory relief is his claim that he, and his wife, mistakenly designated the Red Cross as a primary beneficiary because of an ambiguity in the North Central's annuity policies, and/or in the Change of Beneficiary forms, which led to their rescission of his status as the primary beneficiary of the policy. Our

first task, then, is to determine whether the terms of the policies were, in fact, ambiguous. If so, then it will be necessary to determine whether the facts of this case warrant the reformation of the annuity contracts, that the Plaintiff has requested.[2]

■ "Whether there is ambiguity in a contract is a legal determination," amenable to the Court's disposition. *In re Ashman,* 608 N.W.2d 853, 858 (Minn.2000). However, upon finding that an ambiguity exists, the question becomes one of fact, for a Jury to resolve. *Hydra–Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 916–17 (Minn.1990). "An ambiguity exists when a word or phrase in an insurance contract is reasonably subject to more than one interpretation." *Mutual Service Cas. Ins. Co. v. Wilson Tp.,* 603 N.W.2d 151, 153 (Minn. App.1999), rev. denied (Minn., March 14, 2000), citing *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.,* 457 N.W.2d 175, 179 (Minn.1990); *Cooper v. Lakewood Engineering and Mfg. Co.,* 45 F.3d 243, 245 (8th Cir.1995). "Whether an ambiguity exists is determined from the viewpoint of a layperson, not a lawyer." *Id.* Of course, "[i]n interpreting a contract, the language is to be given its plain and ordinary meaning." *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998).

■ 1. *The Original Annuity Policy.* As noted, the Plaintiff contends that the original policies were ambiguous because of their failure to define the terms "primary beneficiary," and "contingent beneficiary." A review of the provisions of the parties' original contracts openly reveals that they suffered from no such deficiency. The policies either define, or plainly ex-

---

**2.** Under Minnesota law, "[a] court may reform a written contract where the following elements are proved by clear and convincing evidence: 1) there was a valid agreement between the parties expressing their real intentions; 2) the written instrument failed to express the real intentions of the parties; and 3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the

other party." *Klimstra v. State Farm Auto Ins. Co.,* 891 F.Supp. 1329, 1340 (D.Minn. 1995), aff'd, 95 F.3d 686 (8th Cir.1996), citing *Nichols v. Shelard Nat'l Bank,* 294 N.W.2d 730, 734 (Minn.1980). "Absent ambiguity, fraud or misrepresentation, a mistake of one of the parties alone as to the subject matter of the contract is not a ground for reformation." *Id.*

plain, the operative terms of the parties' agreement. First, the policies describe the term "Annuitant," as "the person who is to receive Annuity Benefit Payments under the terms of this policy." *Annuity Policy, Ocel Aff., Ex. E.* The policies further provide that the "Beneficiary named in the Application will receive the Death Benefit unless you subsequently name a new beneficiary," and that, in such an event, "we will pay the Death Benefit in a lump sum to the Beneficiary named in your last change of beneficiary request as provided below." *Id.* [emphasis added].

The policies identify a "Beneficiary," as "the person, persons or entity designated to receive benefits payable upon death of the Annuitant." *Id.* Moreover, while not, *per se,* defining the term "contingent beneficiary," the policies explain that, "[i]f no primary beneficiary survives the Annuitant, the Death Benefit will be paid in equal shares to the contingent beneficiaries who survive the Annuitant." *Id.* Given these straightforward explanations of the operative terms of the annuity policies, we are persuaded that, as a matter of law, the policies provided a person, who was without legal training, sufficient information to understand the meaning and purposes of the change of beneficiary procedures.

Finding no ambiguity, we are not empowered to assess the parol evidence, which the Plaintiff has garnered, so as to modify the provisions of a contract that we do not find to be legally uncertain, or to name a different beneficiary who, assertedly, was the person intended by the Wilsons to benefit from one or both of their deaths. See, *MTS Co. v. Taiga Corp.,* 365 N.W.2d 321, 325 (Minn.App.1985) ("When contract terms are clear and the contract is complete, parol and extrinsic evidence may not be admitted to show an ambiguity."), citing *Hield v. Thyberg,* 347 N.W.2d 503, 507 (Minn.1984). The terms of the policies are unambiguous and, notwithstanding the Plaintiff's attestation that he, and Mrs. Wilson, relied upon North Cen-

tral's agent when preparing the application for their signatures, *Affidavit of Forest O. Wilson* ¶ 2, the meaning of the document was plain and obvious, and their assent to the contents of the application was, on the Record before us, knowingly given.

■ 2. *The November 4, 1989, Change of Beneficiary Document.* As related by the Plaintiff, on November 4, 1989, he and his wife decided to include their children as beneficiaries under their annuity policy. *Wilson Aff.* ¶ 3. The Plaintiff avers that, prior to making their changes in beneficiary designations, they discussed their intentions, with their North Central agent, in a telephone conversation. *Id.* In that conversation, the agent was purportedly informed that the Wilsons wanted to include their children, as beneficiaries, under the annuity policies, and the agent was expressly instructed that the children were only to receive the Death Benefits upon the passing of the Plaintiff and Mrs. Wilson. *Id.* In response, the unidentified North Central agent transmitted a document to the Wilsons which, upon their execution, the Wilsons believed would effect the beneficiary designations that they had intended.

As noted, the Wilsons' change of beneficiary request contained the following language:

> We have decided to change [sic] our status of our ANNUITS. We want our policies to be paid on DEATH to our children.

*Affidavit of Diana Bouschor Dodge, Ex. A.* This document is plainly ambiguous, for the description of the signatories' intent utilizes improper and confusing grammar; namely, the reference to "change our status of our ANNUITS." The document is, therefore, ambiguous as to its stated purpose. Moreover, the second sentence of the request is ambiguous since it does not identify whose death should trigger the payment of benefits to the Wilsons' children. Lastly, the meaning of term "ANNUITS" is uncertain, as it is undefined in

the contract, and is not defined in any dictionary to which the Court has had access.

By its terms, the Wilsons could arguably have read their directive, to North Central, as meaning that the benefits of the policies were to be paid to their children upon both of their deaths. However, the reading attributed to the document, by the Defendants, is no less plausible for, in their view, the Wilsons' written instruction meant that the benefits were to be paid upon the death of the Annuitant, who continued to be Mrs. Wilson. Given the patently ambiguous nature of the instruction, that was employed by the Wilsons to effect a change of beneficiaries in their annuity policies, we may properly consider the extrinsic and parol evidence, which has been proffered by the parties, in ascertaining the meaning of the Wilsons' written instruction. See, *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn.1998); *Wick v. Murphy*, 237 Minn. 447, 54 N.W.2d 805, 808 (1952) (contract terms that confuse, rather than clarify, the meaning of a contract are ambiguous); *Ecolab, Inc. v. Gartland*, 537 N.W.2d 291, 295 (Minn.App.1995) ("The court may also rely on extrinsic evidence to resolve an ambiguity"), citing *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979).

■ As noted, the Plaintiff has asserted, in his sworn Affidavit, that it was his, and Mrs. Wilson's, directive to the North Central agent, that the Death Benefit should be made payable to the Wilsons' children upon both of their deaths. *Wilson Aff.* ¶ 3.

Assuming, as we must for these purposes, that such an instruction was provided to the North Central agent, we find that the document, which was prepared by the agent, is ambiguous as to the Wilsons' intent with respect to designating their children as the policies' beneficiaries.

Nowhere in the change of beneficiary document is there an indication that the Wilson children were to be primary, or contingent beneficiaries of the policy. Rather, the change of beneficiary request leaves open that core question as to its purpose and, therefore, a genuine issue of material fact exists as to the effect of the change of beneficiary request of November 4, 1989, such as to preclude the entry of Summary Judgment on that basis. This determination, however, does not end our analysis, as a subsequent Change of Beneficiary form, which is the crux of the parties' dispute over the annuity proceeds, supersedes the change of designation of November 4, 1989.

■ 3. *The February 26, 1997, Change of Beneficiary Form.* Not surprisingly, the Defendants focus on the Change of Beneficiary form of February 26, 1997, as being the operative document which excluded the Plaintiff as the primary beneficiary of the annuity policies at issue. Understandably,[3] in opposing the Defendants' Motion, the Plaintiff has not addressed in his Memorandum, let alone referenced—other than in passing—the Change of Beneficiary form that was executed, by the Wilsons, in 1997. Notwithstanding the Plaintiff's silence on this issue, our close review of the

---

3. In view of the factual Record before us, and the governing law, we think the silence of the Plaintiff's Memorandum, on this issue, is understandable as, by our reckoning, little of substance could be argued that would undermine the legitimacy of the Change of Beneficiary form of March 3, 1997. We are confident that, if the Plaintiff was aware of any cogent argument, to blunt the designation of the Red Cross, which the Wilsons exercised on March 3, the same would be proffered for our review.

We understand the Plaintiff's regret that the Red Cross should now receive the annuity proceeds, rather than to allow a continuation of periodic annuity payments to the Plaintiff, until his death, but there is nothing in the governing law which would override the Wilsons' express designation of the Red Cross as the primary beneficiary of Policy No. 8249404, on account of a belated change of heart as to the designation made. While the Plaintiff, and his counsel, have forcefully voiced equitable arguments to stave Summary Judgment, these arguments, as a matter of law, became unavailing with the passing of Mrs. Wilson.

matter, satisfies us that the Change of Beneficiary form, which was dated February 26, 1997, does not suffer from the same ambiguities that plagued the earlier change in designation form of November 4, 1989.

In the case of the 1997 form—which was sent to the Wilsons by their North Central agent—it clearly, and unequivocally, explains what the consequences of the change in beneficiaries would be. Importantly, the form explains, in pertinent part, the effect of a newly submitted beneficiary designation, as follows:

> Any previous beneficiary designation with respect to any death benefit proceeds payable at the death of the Insured is revoked.

*Dodge Aff., Ex. B.*

As a result of this plain, and unambiguous provision, the Change of Beneficiary from of 1997, expressly disclosed, to the Wilsons, that a new designation of a beneficiary would revoke any previous designation with respect to the death benefit proceeds. Moreover, the form provided the Wilsons with spaces for them to designate both primary and contingent beneficiaries, thereby precluding any reasonable likelihood that the Wilsons could have been confused, as to whether their beneficiary designations were primary, or contingent. Of course, if they had some question on the matter, they were at liberty to contact North Central which, according to the Record before us, they did not do.

Since the Wilsons were unambiguously informed that any prior beneficiary designations would be revoked by any subsequent designations, the ambiguity, that had flawed the 1989 designation document, is starkly absent here. Accordingly, we are not authorized, by the governing law, to consider the Plaintiff's now stated intent to exclude the Red Cross as the primary beneficiary to the policies. Rather, we are compelled to conclude that, being free from ambiguity, the Change of Beneficiary form of February 26, 1997, accurately expressed the Wilsons' intent to name the Red Cross as the new, primary beneficiary to the policies. Accordingly, the policy is not susceptible to reformation, as the valid agreement of the Wilsons, and North Central, is not ambiguous, nor does it fail to express, as a matter of law, the real intention of the parties to the agreement.[4] Therefore, the Defendants are entitled to Judgment, as a matter of law, and we grant their Motion for Summary Judgment.[5]

---

4. Since the Plaintiff has failed to establish the elements of proof which are essential to a reformation of an insurance agreement, we need not consider whether, as the Plaintiff argues, his unilateral mistake, as well as that of his wife, was induced by fraud or inequitable conduct on the part of North Central. Without deciding the matter, we note that the 1997 form is devoid of any suggestion that the Wilsons were induced, by North Central, to assume any position, and the Plaintiff proffers no other competent showing of fraud, or inequitable conduct, on North Central's part. Rather, the Wilsons' decision, to name the Red Cross as the primary beneficiary to Annuity Policy No. 8249404, was the result of their own, independent and informed judgment. Under these circumstances, the Plaintiff's argument, that North Central's conduct toward him and his wife was inequitable, is without a sufficient showing to responsibly withstand Summary Judgment.

5. After the close of the Hearing of June 29, 2000, the Plaintiff submitted the decision of the Minnesota Supreme Court, in *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271 (Minn.1985), for the proposition that the doctrine of reasonable expectations would provide additional support for a reformation of the contract in dispute. Of course, the submission is untimely, and was undertaken without leave of the Court, as is required under our Local Rules. *Local Rule 7.1(b)(2)(B) and 7.1(d).* Notwithstanding its untimeliness, we note, as did the Court in *Atwater,* that the "doctrine of protecting the reasonable expectation of the insured is closely related to the doctrine of contracts of adhesion." *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* supra at 277. The Court went on to define a contract of adhesion as one where "there is unequal bargaining power between the parties so that one party controls all of the terms and offers the contract on a take-it-or-leave-it basis, [such that] the contract will be strictly construed against the party who drafted it." *Id.*

NOW. THEREFORE, It is—

ORDERED:

1. That the Defendants' Motion Summary Judgment [Docket Nos. 23 and 30] is GRANTED.

2. That the proceeds from Policy No. 8249404 should be distributed, by North Central, to the Red Cross, consistent with the Wilsons' Change of Beneficiary designation of March 3, 1997.

3. That Judgment should be entered for the Defendants, and against the Plaintiff, accordingly.

Here, the terms of the contract were plain, and understandable to a layperson. See, *Cooper v. Lakewood Engineering and Mfg. Co.*, 45 F.3d 243, 245 (8th Cir.1995). The terms of the contract were not "obscure" or hidden in small print, such that a party could not be charged with a knowledge or understanding of their presence and meaning. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, supra at 278. In addition, the Wilsons were not, in any way, pressured or misled with respect to the 1997 change of beneficiary designation. They were not, for instance, presented with a "take-it-or-leave-it" choice. In fact, the decision to change the beneficiary to the Red Cross was, by the Plaintiff's own account, a decision that the Wilsons reached without any input from North Central, which was contacted only after that decision had been made. These facts do not, then, lend themselves to the application of the doctrine of reasonable expectations and, even if the Plaintiff's post-Hearing reliance, on *Atwater*, were timely, we would have no cause to deny the Defendants' Motion on that ground.